Henry Nielsen, Appellee, v. Clarence Pyles, Appellant.

Gen. No. 42,784.

Heard in the third division of this court for the first district at the October term, 1943. Opinion filed April 26, 1944. Rehearing denied May 12, 1944.

C. HELMER JOHNSON, of Chicago, for appellant.

J. THEODORE KIGGINS and LLOYD T. BAILEY, both of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

The first count of a complaint filed in the circuit court of Cook county by Henry Nielsen against Clarence Pyles charged that on December 5, 1941, while he was seated in his automobile, which was standing on

North avenue at the intersection of Austin boulevard waiting for the signal lights to change, it was struck in the rear by an automobile owned and operated by defendant; that as a proximate result thereof plaintiff's automobile was bunted, knocked and propelled forward on the street for a distance of 10 feet; that on account of the bumpers of the automobiles becoming fastened, the automobile in which plaintiff was riding was caused to and did come to a sudden and violent stop; that thereby plaintiff was thrown violently forward and his body was caused to be doubled up and "jack-knifed"; and that he thereby sustained serious injuries for which he asked damages of $35,000. This count alleged the following acts of negligence; failure of defendant to bring his automobile to a stop in time to prevent the collision; failure to keep a proper lookout, to keep his automobile in a reasonable state of repair and to keep the brakes in such a state of repair as to have reasonably brought the automobile to a stop; driving at a high and unreasonable rate of speed and failing to turn opportunely and change the course of his automobile and avoid the collision. Count 2 of the complaint contained substantially the same allegations as Count 1, except that it charges that defendant's violations of his duty were in a manner which exhibited a conscious indifference as to consequences and in a wilful and wanton manner. The answer of defendant admits ownership and operation; denies the allegation of lack of due care; denies the collision as alleged, and on the contrary alleges that it was a minor bump or injury to either party; denies the acts of negligence and affirmatively pleads: that after the slight collision neither automobiles or persons were damaged or injured, and that the plaintiff alighted and tried to lift one of the automobiles to disengage the bumpers; that the strain of lifting the weight caused the injury to plaintiff's back, and not the previous collision; that plaintiff immediately ad-

mitted that the lifting and not the collision caused the injuries; and that plaintiff admitted this on other occasions, and that the plaintiff's injuries, if any, were due to his own negligence. Plaintiff did not reply. The case was tried before the court and a jury. A special interrogatory was submitted to the jury as to whether defendant was guilty of wilful and wanton conduct and this was answered in the negative. The jury returned a verdict finding defendant guilty and assessing plaintiff's damages at $5,000. Motions for a directed verdict, for a judgment notwithstanding the verdict and for a new trial were denied and judgment was entered on the verdict, to reverse which this appeal is prosecuted.

At about 7:15 on the morning of December 5, 1941, plaintiff, a man approximately 50 years of age, residing in Elmwood Park, a suburb of Chicago, drove his 1936 Nash automobile to the Oak Park high school. His daughter accompanied him and he left her off there. He was a butcher and owned and operated a meat market at 2833 Armitage avenue, Chicago. Austin boulevard is a north and south highway and North avenue is an east and west highway. After leaving his daughter at the high school he drove to North avenue and then east to Austin boulevard. His automobile was in good mechanical condition. When he arrived at Austin boulevard he stopped his car for a "stop and go" traffic light, which was red to indicate that eastbound traffic was not to move over the intersection. He sat in his car about one minute, waiting for the light to change to green, when his automobile was struck in the rear by defendant's automobile. This was about 8:00 a. m. His car was knocked forward about 5 feet and then brought to a stop as plaintiff's rear bumper was entangled with defendant's front bumper. Plaintiff testified that he flew back and then forward again; that he "got a snap in the back"; that he felt a slight pain; that he got out of his car,

walked to the rear, saw the bumpers hooked together, bent over and may have started to lift a little when he suffered a sharp pain in his back, could not straighten up and was carried to and placed on the curb; that when he got to the bumper he bent over and couldn't get up; that he bent over to see how the bumpers were hooked; and that he did not remember taking hold of the bumper and lifting. Plaintiff further testified that the car which bumped his car was driven and owned by defendant. Plaintiff stated that he "sat around there about 2 or 3 minutes but nothing was done"; that he told defendant that he gave him "quite a little bump," and that defendant said: "I guess I did." Ernest R. Schwartz of Melrose Park was a passenger in defendant's car. Defendant and Mr. Schwartz carried plaintiff to the curbstone and placed plaintiff in defendant's car and defendant drove to plaintiff's home. Schwartz drove plaintiff's car home. Plaintiff received medical attention. He sustained a fracture of the second lumbar vertebra. At the time of the trial he weighed 182 pounds, was 5 feet 7 or 8 inches tall and "chunky." Plaintiff has suffered continuous pain and trouble with his back since the time of the accident. He testified that he suffered loss on account of inability to take care of his business and to do his buying and that it was necessary for him to wear a brace for at least 15 months.

Defendant testified that he resides in Melrose Park; that on the morning of the occurrence he was driving his 1938 Dodge car; that it was in good condition as far as he knew; that every 1,000 miles he had his car checked for greasing; that he had it checked about two weeks before the occurrence; that he drove his car an average of 1,000 miles a month; that he drove about 30 miles a day; that he never had any difficulty with his brakes; that on the day of the occurrence he drove from his home, which was about 10 miles from North avenue and Austin boulevard; that he made

about 10 stops; that he had no difficulty in making stops; that he was traveling in an easterly direction on North avenue on his way to the place where he then worked at Kilbourne avenue; that as he approached Austin boulevard he observed that the red light was "against him"; that he was then about one half a block away; that he put his foot on the brake and slowed up slightly "to get down"; that he slowed up without thoroughly stopping; that up to the time he saw the red light he was traveling at a speed of 25 miles an hour; that as he approached plaintiff's car he did not notice any difficulty with the brakes; that when he applied the brakes within "say 20 feet of Nielsen's car" the brakes did not hold and he struck that car; that he estimated he was going about 5 miles an hour at the time he struck plaintiff's car; that it was a slight collision; that his car moved plaintiff's car about 5 feet before the cars came to a stop; that it was a slow stop; that then plaintiff got out of his car and defendant and Mr. Schwartz got out of defendant's car; and that they looked at the fenders and bumpers to see if there was any damage. Defendant testified further that there was no damage and they proceeded to disengage the bumpers; that defendant sat on the bumper of his car, lifting the bumper; that Schwartz was on the left side and plaintiff on the right side; that all three were lifting on the bumper; that plaintiff cried he had a sprained back or that he sprained his back; that at that time plaintiff was leaning against the rear of his (plaintiff's) car; that defendant and Mr. Schwartz ceased in endeavoring to disengage the bumpers and went over and talked to plaintiff; that plaintiff was in great pain; that defendant sat plaintiff down on the car alongside of defendant's car and Schwartz and defendant then disengaged the bumpers. Defendant then took plaintiff home in defendant's car and Mr. Schwartz drove plaintiff's car. Defendant then drove his car to a

service station at Harlem and North avenues, where an attendant put in 35¢ worth of brake fluid; that after the brake fluid was put in the car he drove to work and that he drove the car as usual from then until the time of the trial in March 1943, or approximately 15 months; that he did not have any further trouble with the brakes; that at the time of the occurrence plaintiff told witness that he strained his back while lifting the bumper, and that there was no damage to either car. Mr. Schwartz testified in corroboration of the testimony of defendant.

Frank Miller, called by plaintiff, testified that he was service manager for the automobile distributor handling Dodge and Plymouth cars; that his work for the past 15 or 20 months had been to diagnose and sell service; that he was familiar with the mechanical makeup of 1938 Dodge cars and the mechanical workings of brakes and brake drums; that the 1938 Dodge has four wheel brakes; that the system must be absolutely tight at each of the four wheel cylinders and also at the master cylinder; that they must be tight so that when the brake pedal is pushed down there is a "tremendous pressure there"; that all the brakes are connected through a supply line from the master cylinder. In response to a question as to whether the lack of fluid in a 1938 Dodge car with hydraulic brakes would suddenly cause the brakes to fail to operate, witness said it was possible with one exception. Asked what the exception was, he answered: "Before this happened that brake pedal was very low." Asked as to whether there would be any trouble previous to stopping the car, or whether it would come on all at once, he answered: "That would happen all at once; but previous to that the pedal was still low, for this reason: the liquid in the master cylinder was low or almost empty, to the point where it leaves the master cylinder to the wheel cylinder. Once the liquid gets beyond the gasket of the master cylinder, you wouldn't

have any brakes at all." Asked as to what would cause the liquid to become low in the master cylinder, he answered: "Leakage somewhere, only; positively leakage only." He further testified that the liquid in the cylinders is a combination of castor oil and alcohol; that it would take not quite a pint to refill the master cylinder; that on December 5, 1941 the liquid cost from 25¢ to 50¢ a pint; and that it is possible for the brakes to become loose suddenly from leakage.

The first point made by the defendant is that plaintiff failed to prove that the accident and injury resulted from any act of negligence of the defendant, and that the doctrine of *res ipsa loquitur* is not applicable. The doctrine of *res ipsa loquitur* is that whenever a thing which produced an injury is shown to have been under the control and management of the defendant and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford *prima facie* evidence to support a recovery in the absence of any explanation by the defendant, tending to show that the injury was not due to his want of care. The presumption of negligence raised by the application of this doctrine is not absolute or conclusive, but is rebuttable. A presumption is not evidence and cannot be treated as evidence. Presumptions are never indulged in against established facts. They are indulged in only to supply the places of facts. As soon as evidence is produced which is contrary to the presumption which arose before the contrary proof was offered, the presumption vanishes entirely. *Bollenbach v. Bloomenthal,* 341 Ill. 539. Under the facts in this case, defendant's automobile was under the exclusive control of defendant and the collision was such as in the ordinary course of events would not have happened under proper care; hence, the accident itself affords reasonable evidence, in the absence of an explanation, that it arose from the want of proper

care. In our opinion the doctrine of *res ipsa loquitur* is applicable. Defendant saw plaintiff's automobile standing at the traffic light when he was one half blo·k away. His car was then traveling at 25 miles an hour. On observing plaintiff's car he slowed up and at the time of the collision he was traveling about 5 miles an hour. He had ample time in which to bring his car to a stop either by applying his foot brake or by using his emergency brake. We agree with plaintiff that it is logical to assume that had defendant's foot brake failed to work, the first thing he should have done would be to apply the emergency brake. Defendant had ample opportunity to avoid the collision. It will be observed that although plaintiff's car was available, defendant drove plaintiff to the latter's home in his (defendant's) car and then drove to a service station to have the brake fluid poured into the master cylinder. Defendant, in driving a car containing an injured man, must have felt that if necessary he would be able to stop his car either by using the foot pedal or the hand brake. In our opinion the jury was fully justified in finding that the defendant was guilty of negligence.

The second point argued by defendant is that the proximate cause of plaintiff's injury was not the negligence of the defendant, and asserts that the evidence shows that plaintiff's injury was sustained after the accident had occurred and after he had alighted from the car and was lifting on the bumper; that the lifting of the bumper was an independent act of plaintiff, not related to the occurrence of the accident; and that the alleged negligence of defendant did nothing more than furnish a condition by which the injury was made possible by the subsequent independent action of plaintiff. The evidence introduced by plaintiff sought to show that the injury to his spine occurred while he was seated in his car, as a direct result of the defendant's car striking his car. However, plaintiff maintains that

under the authorities it makes no difference whether plaintiff sustained his injuries at the time of the impact, or when trying to disengage the bumpers, and that if he did any lifting in trying to disengage his automobile, the jury had a right to award him damages for the injury so sustained. As there was competent evidence from which the jury could find that the injury to his spine was suffered by plaintiff while he was seated in his car, and as there was also competent evidence to support defendant's contention that the injury occurred when plaintiff helped in disengaging the bumpers, a question of fact for the jury was presented. The law in respect to the damages will be considered in connection with our discussion of the instructions.

The third point advanced by defendant is that, plaintiff failed to prove his cause of action as alleged in his complaint. There is no merit in this contention. Defendant's fourth point maintains that the injury to plaintiff resulted in his own independent voluntary act. As hereinbefore stated, there was competent evidence that the injury plaintiff suffered occurred while he was seated in his car waiting for the stop lights to change. Defendant asserts that his answer, to which no reply was filed, alleges by way of special defense, among other things, that after the collision in which neither automobile nor the persons were damaged or injured, plaintiff alighted and tried to lift one of the automobiles to disengage the bumpers; that this strain caused plaintiff's injury to his back and not the previous collision; and that plaintiff's injury was due to his own negligence. Defendant states that by failing to deny these allegations of special defense, plaintiff admitted them, and that therefore they were not questions of fact for the jury. It will be observed that the complaint alleges that by reason of the collision his body was caused to be doubled up and "jack-knifed" and that thereby he sustained serious and permanent

injuries. From this it would appear that plaintiff was not claiming damages because of any injury due to the disengaging of the bumpers. The claim of plaintiff, as stated in his complaint, is inconsistent with his contention in this court that he may recover whether the injury occurred while he was seated in the car or while endeavoring to disengage the bumpers. By failing to deny the allegations of special defense it would appear that plaintiff had determined to rely on his allegation and testimony that his injury occurred while he was seated in the car. Plaintiff's evidence was presented on the theory that the injuries were caused by the collision. Defendant urges that the court erred in refusing to direct a verdict in his favor at the close of all the evidence. There is no merit in this contention.

Defendant maintains that the court erred in refusing to give to the jury defendant's instructions Nos. 1 to 10 inclusive. Plaintiff does not discuss this point. In our opinion, instruction No. 1 was not applicable to the facts and the refusal to give it was not error. Instruction No. 3 reads:

"Plaintiff has alleged in his complaint that he had been driving in an easterly direction on North Avenue, and had brought his automobile to a stop at Austin Boulevard, that while his automobile was so standing, the defendant's automobile bunted, knocked and propelled plaintiff's automobile along and forward upon said street a great distance, to wit, a distance of ten feet, and then on account of being fastened and attached to said defendant's automobile was caused to and did come to a sudden and violent stop all of which caused plaintiff to be thrown violently forward, and plaintiff's body was caused to be doubled up and jackknifed, and thereby sustained serious and permanent injury. You are instructed that this is a material allegation, and you are further instructed that unless you believe from a preponderance or greater weight of the evidence, that plaintiff's injuries were caused by

reason of defendant's automobile coming in contact with the plaintiff's automobile, and that plaintiff sustained injuries by reason of plaintiff's body being doubled up and jack-knifed as the result of said collision, then the plaintiff cannot recover in this case, and your verdict should be 'not guilty'."

As we have seen, plaintiff's complaint sought damages for the injury to his back, sustained while he was seated in his car. Defendant offered evidence that the injury occurred when plaintiff endeavored to disengage the bumpers. This presented an issue of fact. Plaintiff did not try his case on the theory that he was entitled to recover even though the injury was caused by his effort to disengage the bumpers. Instruction No. 19 was a general instruction as to damages. It does not, however, cover defendant's theory that the injury to plaintiff occurred while he was seated in the car. Defendant was entitled to have the jury instructed on his theory of the case. In view of the pleadings, we are of the opinion that the court erred in not giving an instruction embodying the principle of instruction No. 3. Instructions Nos. 2, 4, 5, 7, 8 and 10 embody the same principle as instruction No. 3. It will be necessary to give only one instruction on the subject. Instruction No. 6 need not be considered, as it relates to the second count charging wilful and wanton conduct. As the jury found for the defendant on the second count, that count is eliminated from the case. Instruction No. 9 is not applicable and the court did not err in refusing to give it.

Defendant finally urges that the verdict is excessive and the result of prejudice. It is unnecessary to consider this point. Because of these views, the judgment of the circuit court of Cook county is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed and cause remanded with directions.*

HEBEL, P. J., and KILEY, J., concur.