104 So.2d 785 (1958)
F. Jerome McNULTY, Appellant,
v.
Annie B. CUSACK, Appellee.
No. 58.
District Court of Appeal of Florida. Second District.
August 29, 1958.
Jones, Adams, Paine & Foster, Samuel H. Adams, West Palm Beach, for appellant.
John E. Bollinger, Hamilton, Nason & Butler, Edgar G. Hamilton, West Palm Beach, for appellee.
ALLEN, Acting Chief Judge.
This is an appeal from a final judgment in a negligence action, entered after a directed verdict for plaintiff as to liability. Annie B. Cusack sued F. Jerome McNulty as the result of a rear-end collision between a car driven by plaintiff and another driven by defendant. Defendant's car ran into the rear of plaintiff's car at an intersection. The jury brought in a verdict for plaintiff in the amount of $16,000.
The appellee has filed a motion to strike appellant's brief, motion to dismiss the appeal *786 and a motion to affirm the judgment; all motions pertaining to the fact that no appendix was filed and attached to appellant's brief. Due to the novelty of the question presented by this appeal, the court deems it advisable to deny the three motions, above, since we shall affirm the lower court for the reasons hereinafter stated.
We state the principal question involved here as follows:
"Whether the showing of a rear-end collision and the circumstances under which it occurred, in the absence of explanation, gives rise to a presumption of negligence so as to authorize a directed verdict, or whether it only gives rise to an inference of negligence sufficient for presentation to the jury."
There is a split of authority on whether or not a rear-end collision, coupled with circumstances under which it occurs, gives rise to an inference or a presumption of negligence. The following authorities hold that a presumption arises and that the burden of going forward with the evidence is on the person who ran into the preceding car from the rear: Douglas v. Silvia, 1935, 55 R.I. 260, 180 A. 359; Muhleisen v. Eberhardt, La. App. 1945, 21 So.2d 235; Crochet v. A. & P. Truck Lines, La. App. 1951, 52 So.2d 265; and Nielsen v. Pyles, 1944, 322 Ill. App. 574, 54 N.E.2d 753.
The Rhode Island court, in the case of Douglas v. Silvia, supra, said:
"We agree with the rule established by the cases of O'Donnell v. United Electric Rys. Co., 48 R.I. 18, 134 A. 642 and Riccio v. Ginsberg, 49 R.I. 32, 139 A. 652, 62 A.L.R. 967, that proof of a rear-end collision makes a prima facie case of negligence against the driver of the car in the rear. This does not mean, however, that the driver of an automobile which is following another is to be held liable under all conditions and irrespective of existing circumstances. When a prima facie case is made out by proving that the plaintiff was damaged in a rear-end collision, the duty of going forward with evidence of due care falls upon the defendant. If the testimony then shows a conflict of evidence from which different conclusions may reasonably be drawn by ordinarily prudent persons, then the question becomes one of fact for the jury to determine under proper instructions from the court. The burden of proof in such a case still remains with the plaintiff."
In the case of Muhleisen v. Eberhardt, supra, it was said [21 So.2d 236]:
"It will be seen from the statement of the pleadings in the case that the main question presented to us for determination is one of fact and, since the defendant admits that his truck ran into the rear of the Muhleisen car in broad daylight while it was stopped upon the roadway, the burden of proof was upon him to show that his driver was free from fault. * * *"
The case of Harvey v. Borg, 1934, 218 Iowa 1228, 257 N.W. 190, 193, indicates the logic of those cases which hold that only an inference of neglect arises from the fact that a rear-end collision occurred and, therefore, it becomes a matter for the jury.
In Harvey v. Borg, supra, the Supreme Court of Iowa said:
"It is universally agreed that no inference of negligence arises from the mere fact that a collision occurred. A collision of two motor vehicles might result without negligence upon the part of the operator of either of them. The facts and circumstances surrounding the occurrence must be considered. It is certainly the general rule that a truck driven by a careful and prudent driver would not ordinarily crash with the rear of a forward moving vehicle of any kind. The inference recognized in such cases is by no means conclusive and may be readily dissipated by an explanation on the part of the party *787 causing the injuries by evidence in the usual way. Appellant did not see fit to offer any explanation or to present testimony in their behalf. Appellee made out a prima facie case of negligence, and, in the absence of explanation on the part of defendant or of other evidence, an issue was presented for the jury."
See also Wright v. Clausen, 253 Ky. 498, 69 S.W.2d 1062, 104 A.L.R. 480, and Meek v. Allen, 1948, 162 Pa.Super. 495, 58 A.2d 370.
In the case of Townsend Sash Door & Lumber Company v. Silas, Fla. 1955, 82 So.2d 158, 160, which involved the so-called "range of vision rule", Mr. Justice Thornal, in a special concurring opinion, said:
"We further point out that in the cases, relied upon by the appellant and cited above, the Court considered all of the attendant and related circumstances and came to the conclusion that in view of such circumstances the injured party was guilty of contributory negligence as a matter of law because of the fact that the evidence on the subject was undisputed. In none of the cases did the Court go astray of the established rule that where the evidence is in conflict or where reasonable minds might differ as to the conclusions and appropriate inferences to be drawn therefrom, the problem of resolving the doubts and conflicts is the responsibility of the jury. Whether the driver of an automobile has maintained adequate control of his vehicle within the range of his vision as required by the peculiar circumstances of each particular case is a question of fact to be weighed and considered by the jury, unless there is no conflict on the subject as was determined in the three cases cited. The so-called `range of vision rule' is actually no different from any other rule of conduct imposed by law upon the operators of motor vehicles. If the evidence is undisputed, the question of negligence or contributory negligence becomes one of law. If the evidence is in dispute and presents to the minds of reasonable men potentially different conclusions and inferences in the light of the circumstances of a particular case, then the problem of resolving the conflicts is the responsibility of the jury."
The record shows that the sole testimony as to negligence in the case was that of the plaintiff. After the plaintiff rested, the defendant also rested, so there was no explanation on the part of the defendant of his actions of crashing his car into the rear-end of plaintiff's car. The following testimony appears in the transcript:
"Q. You have alleged in your Complaint that on or about May 1st, 1956, that you were involved in a collision. Will you just tell the Jury now where you were and what happened at that time? A. I was standing at a traffic light on Datura Street on Florida Avenue and Datura Street, going north. I was on the east side. I was at a complete stop.
"Q. Yes? A. Waiting for the light to change to green. It was about to change to green.
"Q. On what street was your car? Had your car been driven before you stopped? A. I was on Florida Avenue.
"Q. And headed which way? A. Headed north.
"Q. What was the color of the light as you faced it? A. Red.
"Q. What was the reason for your stopping there? A. Because the light was red.
"Q. Then what happened? A. Well, I was just sitting waiting, watching for the light to change and there was a terrible bang right in the back of my car. I almost went through the windshield.

*788 "Q. What caused that? A. Mr. McNulty's car.
"Q. His car did what? A. Slammed into the back of me.
"Q. Alright ma'am, will you tell us then what you did, what happened then? A. I turned off the ignition and got out of the car.
"Q. And what happened? A. Mr. McNulty came rushing up and apologized in every way possible.
"Q. Yes? A. And I asked him, I said `Didn't you see the light?' He was flustered and still apologizing and then we looked at my car and I said `You have wrecked my car,' and he said `Well, that can be fixed. Oh, that can be fixed, you know.' He had driven his car over to the side of the east side and parked it and he said, `You better move the car since it is at a traffic light or someone else will hit you,' and he suggested that I park it in front of his car. Well, I knew I couldn't do it so I turned around the corner and parked the car and I come back to him and he was fumbling, looking for a pencil and said he couldn't find a pencil and I said `Well, maybe we can get one at the gas station,' and I ran over to the gas station and I come back, oh, after I moved the car his attitude changed. He just got sort of rude and was in a hurry.
"Q. What did he say? A. Well, he said he was in a big hurry and didn't have all day to stand around there. I said, `Well, we will get a pencil at the gas station,' and I crossed the street and it is a wonder I didn't get killed, and I brought back a pencil and I wrote down his name and address and he said I could contact him at that address."
Subsequently plaintiff testified that the collision took place between three and four in the afternoon.
We, therefore, have the testimony of the plaintiff that she had stopped her car at a street intersection where the traffic light showed red and was waiting for the light to change to green, that while still sitting there, the defendant's car crashed into the back of her car; and in addition, that the defendant rushed up and apologized to her and when she stated to him that he had wrecked her car, he remarked that that could be fixed.
Was there sufficient evidence before the court to create a presumption of negligence on the part of the defendant so as to require him to go forward with testimony to show that he was not legally at fault in crashing into the back of plaintiff's car? We agree with the circuit judge that the facts above stated created a presumption of negligence and not an inference of negligence and that, in the absence of an explanation from the defendant, a verdict should have been directed by the lower court in favor of the plaintiff. We think the court could take judicial notice of the fact that it was the duty of both the plaintiff and the defendant to stop at the intersecting street when a traffic light was showing red. In this day of heavy motor traffic all over the nation, the youngest or the most careless motorist knows that it is negligence to go through a red light. In addition, the rules of the road would require the defendant, as he approached the intersection, to have his car under control so that he would not drive into the rear-end of a motorist obeying traffic signals by waiting for the red light to turn green. If the defendant had a justifiable reason for not observing traffic rules, then it was his duty to go forward with the evidence to show that he was not negligent and thus, permit the case to go to a jury for the jury's determination on conflicting theories or facts.
The defendant also questions the "excessiveness of the jury's verdict". This is a matter peculiarly within the orbit of the jury and we do not find that the verdict *789 was so excessive as to require it to be set aside under the facts in this case.
The judgment is affirmed.
SHANNON, J., concurs.
GERALD, LYNN, Associate Judge, dissents.