ZEHMER, Judge,
dissenting.
On this appeal we review a judgment entered pursuant to a jury verdict for defendants in a personal injury action arising out of an accident in which the vehicle being driven by the appellee Theodore J. McClain, defendant below, collided with the rear end of the vehicle operated by appellant, Stephenson T. Price, plaintiff below. Plaintiff contends the evidence was insufficient to overcome the legal presumption that defendant was negligent in colliding with plaintiffs vehicle. Plaintiff argues that the court should have granted his motion for a directed verdict on the issue of liability or, alternatively, should have granted his motion for new trial because the jury verdict was contrary to the manifest weight of the evidence.
The law governing these issues is well established. When a defendant runs into the rear of a plaintiffs automobile which is lawfully stopped in traffic, there is a presumption of negligence on the part of the defendant which entitles the plaintiff to recover in the absence of an explanation by the defendant. Gulle v. Boggs, 174 So.2d 26 (Fla.1965); McNulty v. Cusack, 104 So.2d 785 (Fla. 2d DCA 1958). To create a jury issue, however, it is not necessary for the following driver to prove the accident was unavoidable; it is necessary only that the following driver offer a substantial and reasonable explanation for his actions. Sistrunk v. Douglas, 468 So.2d 1059 (Fla. 1st DCA 1985). In the absence of a substantial, reasonable explanation by the defendant, the plaintiff is entitled to prevail. See Brethauer v. Brassell, 347 So.2d 656 (Fla. 4th DCA 1977).
In this case defendant relied upon the quick-stop exception to the presumption discussed in Chiles v. Beaudoin, 384 So.2d 175 (Fla. 2d DCA 1980). In essence, the substantial and reasonable explanation given by defendant was that he was following plaintiff in a line of traffic and, because plaintiff abruptly stopped, he was unable to avoid the collision.
I would reverse because the evidence is insufficient to establish that defendant made an abrupt stop falling within the rule announced in Chiles v. Beaudoin, 384 So.2d 175.
The accident occurred June 30, 1982, between 3:00 and 4:00 p.m. on Fairfield Drive in Pensacola. Plaintiff and defendant were the only two witnesses to testify on the issue of liability. Both stated they were familiar with Fairfield Drive, that it was a two-lane paved highway, and that the traffic was heavy in both directions at the time of the accident. The weather was good, the road was dry, and the parties were proceeding in a lane of traffic traveling between thirty-five and forty miles per hour. Plaintiff testified that he was following a pickup truck and observed the truck slow down and move to the left as it came to a stop. It was plaintiff’s impression that the truck was stopping in order to make a left turn but could not do so because of oncoming traffic in the opposite lane. Plaintiff stated he had no trouble whatsoever bringing his car to a complete stop at a distance of fifteen or sixteen feet behind the truck without slamming on his brakes. Plaintiff said he kept his foot on the brakes so his car would not roll forward, and then testified:
Q. Can you estimate the length of time that you were completely stopped before you were impacted?
A. It happened very fast. In one of the depositions, under the encouragement of the other attorneys, tried [sic] to relate it in seconds. But I made the mention, I can’t tell what would happen to a car in those conditions in one or two or three seconds. I can only say it happened tremendously or very, very fast, very quickly.
Q. What happened to your car after the impact, Mr. Price?
A. Well, I was shoved forward, barely the pickup, either bumper or body extension, enough to fracture the left turn indicator on the front of my car, *1318 which measures twenty-four inches from the ground to the center of the lens. It’s a rounded lens. It faces forward and to the side. And some part of the pickup body punctured it enough, it did not fall out. And I was no longer moved beyond that point.
On cross-examination plaintiff testified that the sequence of events from the time he saw the pickup truck and sensed he was going to turn or stop until the time of impact occurred in five seconds or less. He twice stated on cross-examination that he was not in a panic situation and “that I was not forced into a panic stop or a crash type stop.” He said, further, “I stopped with very little difficulty, because I saw what the pickup was going to do.”
The defendant, Mr. McClain, testified on direct examination, regarding plaintiffs sudden stop, as follows:
Q. All right, sir. I’d like for you to tell the jury, Mr. McClain, in your own words and in as much detail as you can, exactly how this accident occurred from the time that you first became aware that something was wrong, until the impact or the impacts actually occurred.
A. All right. Well, as we were traveling in a northerly direction on Fairfield Drive, and the traffic being heavy, and I considered myself observing traffic, being as careful as I knew how to be. The next thing that I knew up around 77th Street or Avenue, whichever one it’s called, I saw Mr. Price’s automobile either stopped or in the process of stopping, I’m’ not certain which. I don’t recall seeing the brake lights, but I do — I was aware of the fact that he was stopped or in the process of stopping. Immediately I applied my brakes and locked my wheels. And the thought occurred to me to try to go around him on the inside. But the oncoming traffic was so heavy I knew that would be disastrous....
* * * * * *
A. So, with my automobile sliding, and I still thought I was going to be able to stop in time, hopefully. But nevertheless, I did hit Mr. Price’s car from the back, more to the left hand side than to the right.
******
Q. From what you were able to see and from what you’ve told us, will you tell this jury whether or not Mr. Price stopped abruptly or suddenly?
******
A. I thought that he stopped abruptly. I did the very best I could stopping my automobile. And it had good tires. It was mechanically in good shape. And I did the very best that I could under those conditions. But, nevertheless, I did hit him. And when the automobiles came to a stop, I immediately got out, and I went to Mr. Price’s automobile, and asked him if he was hurt.
Q. Let’s back track for a moment, if we may, Mr. McClain. When you collided with the rear of Mr. Price’s vehicle, what, if anything, happened immediately thereafter, after that impact?
A. Well, almost immediately when I hit him, the automobile from behind hit me.
Q. Can you give us any idea how much time elapsed from the moment that you collided with the rear of Mr. Price’s vehicle until you were struck from the rear?
A. Oh, it was almost immediately. I don’t know. Maybe a second or two seconds. I’m just guessing at that, but it was almost immediately.
[Emphasis added.]
Defendant also testified that he was given a traffic citation for careless driving in connection with the accident, to which he pled guilty and paid a fine of twenty-five dollars. He further explained that he did not plead guilty because he felt the accident was his fault, but because he felt it was the “cheapest way to go at that time.” He further explained that he thought it more “sensible” to pay the fine and to “have it disposed of than to go to court and fight over $25.” On cross-examination, defendant testified that “before I hit Mr. *1319 Price, as I said, I don’t know if he stopped or [sic] in the process of stopping, but it, it seemed to me that he had stopped abruptly.” Yet defendant’s testimony confirmed that he was “80 to 90 feet back” when he noticed that plaintiff was stopped or stopping.
When read in context with the testimony as a whole, defendant’s testimony does not establish that plaintiff stopped abruptly. Accepting the defendant’s testimony in the light most favorable to him, it establishes that he was some eighty to ninety feet behind plaintiff’s vehicle in heavy traffic when he saw that plaintiff’s automobile was either stopped or in the process of stopping. He did not recall seeing plaintiff’s brake lights, but this lack of ability to recall establishes neither that the brake lights were on or not on. When asked point blank by his counsel whether plaintiff stopped abruptly or suddenly, defendant equivocally answered only that he thought that plaintiff stopped abruptly. Defendant’s testimony establishes only that he, not plaintiff, made a panic stop by slamming on the brakes, skidding into the rear of plaintiff’s vehicle, and precipitating an immediate collision to the rear of defendant’s automobile by the car following him. Defendant’s testimony simply fails to establish that plaintiff did not come to a reasonable, controlled stop, as testified by plaintiff. Defendant’s testimony does nothing more than establish that when he perceived plaintiff's vehicle to be stopped or in the process of stopping it was too late for defendant to stop without colliding with plaintiff. There was no evidence that it was uncommon for vehicles to make a left turn across the two-lane highway and require following vehicles to stop to support an inference that defendant should not, under such circumstances, have anticipated the vehicles in the line of traffic in front of him to stop.
To vitiate the legal presumption of negligence relied on by plaintiff, defendant was “required only to produce evidence from which his exercise of reasonable care under the circumstances could properly be inferred by the jury.” Sistrunk v. Douglas, 468 So.2d 1059, 1060-61. Defendant failed to carry that burden. In my view, defendant’s testimony established only that he was not paying sufficient attention to the vehicles ahead of him to avoid collision with a vehicle coming to a reasonable, controlled stop under normal, expected conditions. This is a clear violation of section 316.0895, Florida Statutes (1983), and constitutes negligence. To permit defendant to legally avoid the presumption of negligence in this case is tantamount to holding that any driver can avoid the presumption by simply claiming he was following in a line of traffic when he collided with the vehicle in front of him. I decline to construe the decision in Chiles v. Beaudoin, 384 So.2d 175, as intending this result.
Accordingly, I would reverse the judgment below with directions to enter a directed verdict for plaintiff on the issue of liability and grant a new trial on the issue of damages.