752 So.2d 592 (2000)
Sybil EPPLER, Petitioner,
v.
TARMAC AMERICA, INC., Respondent.
No. SC91066.
Supreme Court of Florida.
February 17, 2000.
Rehearing Denied March 21, 2000.
*593 David R. Lewis of Foerster, Isaac and Yerkes, P.A., Jacksonville, Florida, for Petitioner.
Frank W. Hession and Robert B. Guild of Hession & Guild, Jacksonville, Florida, for Respondent.
SHAW, J.
We have for review Eppler v. Tarmac America, Inc., 695 So.2d 775 (Fla. 1st DCA 1997), wherein the district court certified the following question:
Does the testimony of the defendant of a sudden unexpected stop immediately after starting forward constitute sufficient evidence to overcome the presumption of negligence which attaches in a rear-end collision?
Id. at 778. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the affirmative as explained below and approve Eppler.
In the late afternoon of September 27, 1994, Sybil Eppler's station wagon was stopped in a line of traffic at a stoplight and Lawrence Morris's cement-mixer truck, which was owned by Tarmac America, Inc., was stopped directly behind her. At some point after the light turned green, Eppler's car was struck from behind by Morris's truck, which was moving forward at a low rate of speed. Eppler's car rolled forward and made contact with a car driven by James Richards. Richards' car was undamaged and he later drove off. Eppler also appeared uninjured, and she too drove off. The next day, however, Eppler complained that her neck and back hurt, and she sought treatment from a chiropractor and from a psychiatrist. She sued Tarmac.
Eppler testified at trial that she was struck by Morris's truck before she had started moving forward at the stoplight. Morris, on the other hand, testified that once the light had turned green, all the vehicles in line began accelerating and then Eppler suddenlywithout warning and for no reasonslammed on her brakes. At the close of all the evidence, Eppler moved for a directed verdict, and the trial court denied the motion. The jury returned a verdict in favor of Tarmac, finding no negligence on Morris's part.[1] Eppler appealed the denial of her motion for a directed verdict and the district court affirmed, ruling that the evidence presented by Tarmac was sufficient to overcome the presumption of negligence that attaches to the driver of a rear vehicle involved in a rear-end collision:
In the instant case, the evidence viewed in the light most favorable to the defendant established an unexpected stop immediately after starting to move when the signal light changed. We, therefore, [affirm the trial court's ruling on the motion for a directed verdict].
Eppler v. Tarmac America, Inc., 695 So.2d 775, 778 (Fla. 1st DCA 1997) (on motion for rehearing).
While Eppler agrees that evidence of a sudden unexpected stop by the forward driver is sufficient to overcome the presumption of negligence that attaches to the *594 rear driver, she contends thatviewing the testimony in the light most favorable to Tarmacher own stop was merely sudden, not unexpected. She claims that the trial court erred in denying her motion for a directed verdict. We disagree.
The rebuttable presumption of negligence that attaches to the rear driver in a rear-end collision in Florida arises out of necessity in cases where the lead driver sues the rear driver. The device bears only upon the causal negligence of the rear driver:
The usefulness of the rule is obvious. A plaintiff ordinarily bears the burden of proof of all four elements of negligence duty of care, breach of that duty, causation and damages. Yet, obtaining proof of two of those elements, breach and causation, is difficult when a plaintiff driver who has been rear-ended knows that the defendant driver rear-ended him but usually does not know why. Beginning with McNulty, therefore, the law presumed that the driver of the rear vehicle was negligent unless that driver provided a substantial and reasonable explanation as to why he was not negligent, in which case the presumption would vanish and the case could go to the jury on its merits.
Jefferies v. Amery Leasing, Inc., 698 So.2d 368, 370-371 (Fla. 5th DCA 1997) (citations omitted).
This Court in Gulle v. Boggs, 174 So.2d 26 (Fla.1965), endorsed the rebuttable presumption established in McNulty v. Cusack, 104 So.2d 785 (Fla. 2d DCA 1958), and held that the burden is on the defendant to come forward with evidence that "fairly and reasonably tends to show" that the presumption of negligence is misplaced:
We have stated that the presumption announced in McNulty, and subsequently followed, is rebuttable. It is constructed by the law to give particular effect to a certain group of facts in the absence of further evidence. The presumption provides a prima facie case which shifts to the defendant the burden to go forward with evidence to contradict or rebut the fact presumed. When the defendant produces evidence which fairly and reasonably tends to show that the real fact is not as presumed, the impact of "the presumption is dissipated". Whether the ultimate fact has been established must then be decided by the jury from all of the evidence before it without the aid of the presumption. At this point the entire matter should be deposited with the trier of facts to reconcile the conflicts and evaluate the credibility of the witnesses and the weight of the evidence.
Gulle, 174 So.2d at 28-29 (emphasis added).
In the present case, Tarmac came forward with evidence showing the following: (1) The Tarmac truck was stopped ten to eleven feet behind Eppler's auto in a line of traffic at a red light;[2] (2) when the light turned green, all the vehicles in the line proceeded forward and were accelerating in a routine fashion;[3] (3) the Tarmac *595 driver, Morris, accelerated slowly with the other vehicles, shifted from first to second gear, and had been in second gear for three or four seconds when Eppler suddenly without warning and for no reason slammed on her brakes.[4] Pursuant to the Gulle standard, this evidence "fairly and reasonably tends to show" that the presumption of negligence on Morris's part is misplaced, for an abrupt and arbitrary stop in such a situation is not reasonably expected. In fact, it is a classic surprise.
The present "arbitrary stop" case thus differs from Tacher v. Asmus, 743 So.2d 157 (Fla. 3d DCA 1999), and other "sudden stop" cases wherein the forward driver merely stopped abruptly.[5] In Tacher, three autos collided in a chain reaction at a stoplight. The evidence showed the following: After the light had turned green, all the vehicles were proceeding forward when the auto in front of Tacher (driven by Matthews) suddenly stopped; Tacher was unable to stop in time and his vehicle struck Matthews' auto; Matthews' auto then struck Asmus's vehicle. Matthews and Asmus sued Tacher, and the trial court granted their motion for a directed verdict. The district court affirmed.
The district court in Tacher explained that the forward driver's stop should have been reasonably expected:
We conclude that a sudden stop by a preceding driver or drivers approaching or going through a busy intersection should be reasonably expected so as to impose a duty on the drivers which follow them to operate their vehicles at a safe distance. It is not at all unusual for vehicles [proceeding] through busy intersections, for example, to have to suddenly brake for pedestrians, emergency vehicles or other drivers running a red traffic light from a cross-street. For that reason, we do not believe that the evidence of a preceding vehicles' sudden stop at a busy intersection, in this case, was sufficient to overcome the presumption of negligence on the part of appellant, Tacher.
Tacher, 743 So.2d at 158. Unlike the present case where Morris testified repeatedly that Eppler slammed on her brakes "for no reason," the district court in Tacher noted no such misconduct on the part of Matthews or Asmus. Tacher is framed as a simple "sudden stop" case.
Based on the foregoing, we agree with the decisions of both the trial and district courts below. Abrupt and arbitrary braking in bumper-to-bumper, accelerating traffic is an irresponsible and dangerous act that invites a collision. Cases involving allegations of such an act are properly submitted to the jury, for the crucible of *596 cross-examination is well-suited for gleaning meritorious from non-meritorious claims. In the present case, the trial court properly denied Eppler's motion for a directed verdict.
We answer the certified question in the affirmative and approve Eppler on this issue. We distinguish Tacher as explained herein.[6]
It is so ordered.
HARDING, C.J., and WELLS and ANSTEAD, JJ., concur.
PARIENTE, J., dissents with an opinion.
PARIENTE, J., dissenting.
I respectfully dissent. The question certified by the First District and answered by the majority is whether a defendant's testimony of a "sudden unexpected stop" immediately after starting forward constitutes sufficient evidence to overcome the presumption of negligence. A sudden stop, however, is not necessarily an unexpected or unanticipated stop; that is, one that could not reasonably be anticipated by the rear driver under the circumstances. As observed by the Fifth District:
It is not merely an "abrupt stop" by a preceding vehicle (if it is in its proper place on the highway) that rebuts or dissipates the presumption.... It is a sudden stop by the preceding driver at a time and place where it could not reasonably be expected by the following driver that creates the factual issue.
Pierce v. Progressive Am. Ins. Co., 582 So.2d 712, 714 (Fla. 5th DCA 1991) (emphasis supplied). As explained by Judge Green in her recent opinion in Tacher v. Asmus, 743 So.2d 157 (Fla. 3rd DCA 1999):
Where, as in this case, it is claimed that the rear-end collision was precipitated by a sudden stop by the preceding driver, most districts (including our own) have found that the presumption cannot be rebutted if the stop happened at a place and time where it was reasonably expected. See Pierce v. Progressive Am. Ins. Co., 582 So.2d 712, 714 (Fla. 5th DCA 1991); see also Kao v. Lauredo, 617 So.2d 775, 777 (Fla. 3d DCA 1993); Tozier v. Jarvis, 469 So.2d 884, 888 (Fla. 4th DCA 1985); but compare Eppler v. Tarmac Am., Inc., 695 So.2d 775 (Fla. 1st DCA 1997) (the defendants testimony of a sudden and unexpected stop of the preceding driver at an intersection was sufficient to overcome the presumption of negligence and create jury issue of fault).
Id. at 158.
The Third District recognized the conflict between the district courts of appeal as it expressly certified direct conflict with Eppler in its opinion:
We conclude that a sudden stop by a preceding driver or drivers approaching or going through a busy intersection should be reasonably expected so as to impose a duty on the drivers which follow them to operate their vehicles at a safe distance. It is not at all unusual for vehicles [proceeding] through busy intersections, for example, to have to suddenly brake for pedestrians, emergency vehicles or other drivers running a red traffic light from a cross-street. For that reason, we do not believe that the evidence of a preceding vehicles' sudden stop at a busy intersection, in this case, was sufficient to overcome the presumption of negligence on the part of appellant, Tacher.
We therefore affirm the directed verdict entered on the issue of liability in this case. Further, as we recognize that our holding in this case is in direct conflict with the first district's Eppler decision, we certify direct conflict. *597 Tacher, 743 So.2d at 158 (emphasis supplied).
Likewise, the concern in the present case should be whether the forward driver's sudden stop should have been reasonably expected or anticipated by the rear driver. The majority opinion does little to assist the district courts of appeal in resolving the conflict among them concerning application of the presumption of negligence in a rear-end collision when there is a sudden stop by the forward driver at a busy intersection. Instead of resolving the conflict among the districts, the majority attempts to distinguish Tacher from Eppler and neither approves nor disapproves of Kao v. Lauredo, 617 So.2d 775 (Fla. 3rd DCA 1993), and Pierce, 582 So.2d at 712. In my opinion, the holdings of Kao and Pierce are contrary to the result reached by the majority in this case but are consistent with the Third District's opinion in Tacher.
Further, the additional facts supplied by the majority opinion appear nowhere in the First District's Eppler opinion. In Eppler, the First District summarized the testimony at trial as follows:
At trial, both appellant [the plaintiff] and the Tarmac truck driver [the defendant] agreed that appellant had stopped due to a red light, but their testimony differed as to the cause of the accident once the traffic light changed to green. Appellant testified that she was hit by the Tarmac truck before she started forward; however, the Tarmac driver testified that appellant started forward and then stopped suddenly in front of him which caused him to rear-end her vehicle and push it into the vehicle ahead of her. The only other witness to the collision, the driver of the lead vehicle struck by appellant, testified only that he had not started moving forward after the light change when appellant struck him from behind.
Eppler, 695 So.2d at 776. Similarly, in Tacher, the Third District explained the facts as follows:
Tacher was the operator of the third car stopped behind Matthews' vehicle at a distance of three to five feet. After the light turned green, Tacher testified that he observed both the Asmus vehicle and the Matthews vehicle begin to move forward. At that point, Tacher stated that he began to move forward traveling at approximately three to five miles per hour. Suddenly, he saw the Matthews vehicle abruptly stop.
Tacher, 743 So.2d at 157.
More importantly, to the extent the majority attempts to distinguish Eppler from Tacher, the distinction is one without a difference as to the critical issue of the rear driver's negligence. The majority claims that the two cases can be distinguished by asserting that the plaintiff in Eppler "slammed on her brakes `for no reason,'" whereas in Tacher, the court "noted no such misconduct ... [rather] Tacher is framed as a simple `sudden stop' case." Majority op. at 595. This distinction, however, is misplaced because the focus of the Third District's opinion in Tacher was that "the stop happened at a place and time where it was reasonably expected." Tacher, 743 So.2d at 158.
The majority's concern over the possibility of misconduct on the part of the forward driver should be directed toward the issue of the forward driver's comparative negligence, where, as in this case, that forward driver is the plaintiff. Even if the trial court were to enter a directed verdict as to the rear driver's negligence, this decision would not end the liability equation as to the forward driver's negligence. I would address the majority's concern with fault on the part of the forward driver by holding that if the forward driver stopped suddenly at a busy intersection for no justifiable reason, the forward driver could also be found negligent.
In other words, while a sudden stop alone does not defeat a directed verdict on the issue of the rear driver's negligence, a sudden stop that occurs because the forward *598 driver failed to exercise reasonable care (i.e. stopped for no apparent reason) could also be the basis for a claim of comparative negligence where the forward driver is the plaintiff. Indeed, after this Court first adopted the presumption of negligence in rear-end collisions, the principle of comparative negligence replaced the all-or-nothing contributory negligence doctrine. See Hoffman v. Jones, 280 So.2d 431, 438 (Fla.1973).[7] Comparative negligence allows a jury to apportion liability between a negligent plaintiff and a negligent defendant. See id.
Although addressing a case where the rear driver was the plaintiff, Judge Griffin's explanation in Jefferies v. Amery Leasing, Inc., 698 So.2d 368, 371 (Fla. 5th DCA 1997), is pertinent to the fact that the negligence of the forward driver is a question distinct from the negligence of the rear driver who fails to stop:
At the time when this rear-end collision rule was developed, Florida was still a contributory negligence state. Thus, if the presumption were not overcome, the following driver's claim would be barred. Under contributory negligence, a negligent plaintiff could not recover against a negligent defendant.
... Today, when a rear driver sues a lead driver for damages from a rear-end collision, and the lead driver answers with an affirmative defense of comparative negligence, the rule will, at most, establish as a matter of law that the driver of the rear car is liable for some portion of the overall damages. There is no logic in blindly applying the rear-end collision rule to determine the rear driver automatically to be the sole source of negligence in all rear-end collisions. If it is sufficiently demonstrated that the lead driver was negligent as well, the jury should pass upon the question of shared liability and apportionment of damages.
Id. at 371 (emphasis supplied) (citations omitted); see Johnson v. Deep S. Crane Rentals, Inc., 634 So.2d 1113, 1114 (Fla. 1st DCA 1994). I agree. There is no reason that the rear driver should be barred from also establishing that the forward driver's own negligence was a legal cause of a portion of the damages suffered.
As to the defendant's negligence, "If the defendant had a justifiable reason for not observing traffic rules, then it was his duty to go forward with the evidence to show that he was not negligent...." McNulty v. Cusack, 104 So.2d 785, 788 (Fla. 2nd DCA 1958) (emphasis supplied). However, if evidence establishes a reasonable explanation for the rear driver's failure to stop in a timely manner, from which a jury could infer that the rear driver was exercising reasonable care under the circumstances, a motion for directed verdict on the rear driver's negligence should not be granted.
As the majority explains, the rebuttable presumption of negligence places the burden on the defendant to produce evidence that "fairly and reasonably tends to show" that the defendant was not negligent. Gulle v. Boggs, 174 So.2d 26, 29 (Fla.1965). As explained in Gulle, "When the [rear driver] produces evidence which fairly and reasonably tends to show that the real fact [of the rear driver's negligence] is not as presumed, then the impact of `the presumption is dissipated.'" 174 So.2d at 29. For example, in Yellow Cab Co. v. Betsey, 696 So.2d 769, 771 (Fla. 2d DCA 1996), evidence of the slow moving traffic on a heavily congested bridge, combined with the reardriver's explanation that the collision was caused by his avoidance of another emergency situation, was sufficient to rebut the presumption of negligence and defeat a directed verdict. In Sistrunk v. *599 Douglas, 468 So.2d 1059, 1060 (Fla. 1st DCA 1985), testimony that the rear driver was avoiding another road emergency that prevented him from braking in time to avoid the collision when the forward driver unexpectedly decelerated was sufficient to create a jury question on whether the rear driver was acting reasonably. Likewise, in Holden v. Dye, 224 So.2d 350, 351 (Fla. 1st DCA 1969), the presumption of negligence was found to be rebutted when the defendant testified that the plaintiff pulled out sharply from a parking spot in front of the defendant, and that the defendant could not avoid hitting the plaintiff despite applying his brakes and skidding.
The issue of whether the defendant's explanation is sufficient to rebut the presumption of negligence should be evaluated under the standard governing directed verdicts. In other words, once the rear driver provides an explanation for the collision, a directed verdict should only be granted if the party opposing the directed verdict could not prevail under any reasonable view of the evidence. See Bruce Constr. Corp. v. State Exch. Bank, 102 So.2d 288, 291 (Fla.1958); Scott v. Otis Elevator Co., 680 So.2d 462, 462 (Fla. 1st DCA 1996). On a motion for directed verdict, the non-moving party is entitled to all reasonable inferences from the facts that would support his or her claim. See Bruce Constr. Corp., 102 So.2d at 291; Stringer v. Katzell, 674 So.2d 193, 195 (Fla. 4th DCA 1996), review denied, 698 So.2d 1225 (Fla.1997).
This is particularly true in negligence actions. See Conda v. Plain, 222 So.2d 417, 418 (Fla.1969). Negligence is the failure to use reasonable care under the circumstances. See Fla. Std. Jury Instr. (Civ.) 4.1. Thus, to defeat a directed verdict on negligence,[8] the rear driver is "required only to produce evidence from which his exercise of reasonable care under the circumstances could properly be inferred by the jury." Sistrunk, 468 So.2d at 1060-61; accord § 90.302(1), Fla. Stat. (1999) (requiring only "credible evidence" to rebut an evidentiary presumption). Once the presumption of negligence is rebutted, the presumption vanishes and the case is sent "to the jury on the basis of all the evidence submitted, together with justifiable inferencesnot presumptionsto be drawn therefrom." Gulle, 174 So.2d at 29.[9]
The undisputed circumstances of this case show that when the light turned green, the plaintiff was in the proper lane of traffic stopped at a traffic light behind three other vehicles. The plaintiff testified that she was stopped at the traffic light when she was rear-ended by the defendant's truck. The defendant driver, however, stated that the plaintiff had started moving forward after the light turned green, and then suddenly "slam[med] on the brakes," just like the forward driver in Tacher. Taking the testimony and the reasonable inferences in the light most favorable to the defendant, we must assume that the plaintiff had started moving forward and then stopped before the collision.
*600 The sole evidence that the plaintiff's vehicle started and then stopped after a traffic light turned from red to green at a busy intersection does not provide a basis to infer that the driver of the Tarmac vehicle should not have been able to anticipate the stop and avoid the rear-end collision. As Judge Green noted, "It is not at all unusual for vehicles [proceeding] through busy intersections ... to have to suddenly brake...." Tacher, 743 So.2d at 158.
While the Tarmac driver's testimony may establish that the plaintiff stopped suddenly, there is no evidence from which a jury could properly conclude that his vehicle was being operated with the degree of care required by the traffic regulations[10] to control the vehicle so as to avoid colliding with the forward vehicle. Thus, in Eppler, as in Tacher, Kao, and Pierce, the forward driver's stop, even if abrupt, should have been reasonably anticipated as a matter of law.
If testimony that the rear driver did not know why the forward driver had abruptly or suddenly stopped at an intersection were sufficient to rebut the presumption of negligence, then the rear driver's failure to observe the cause of the stop would always be sufficient to dissipate the presumption. This would inappropriately shift the focus to the forward driver's conduct and away from the conduct of the rear driver for failing to stop under circumstances.
I would point out, however, one other wrinkle in the facts in this case. In addition to the arguments it advances in support of the First District's decision, the defendant also asserts that even if its driver had been negligent, the trial court's failure to grant a directed verdict on liability was not erroneous.[11] Also, because there was still a factual dispute as to whether the defendant was a legal cause of the plaintiff's damages, this would have been a further reason for not granting a directed verdict on liability.[12] Indeed, although the defendant claims that the plaintiff's damages were either pre-existing or caused by a subsequent accident, when the trial court denied the plaintiff's motion for directed verdict on liability at the close of the case, it did so on the basis of the "conflicting evidence about the sudden stop." There was no discussion whatsoever about causation or about the plaintiff's comparative negligence. In affirming and certifying the question for review, the district court did not address these arguments raised by the defendant. See Eppler, 695 So.2d at 776 n. 1. Accordingly, while I disagree with the reasoning of the First District in Eppler as to the issue of the defendant's negligence, I would remand this case to the First District for consideration of the effect of the causation question on the propriety of a directed verdict as to liability in this case.
NOTES
[1] The jury responded "No" to the following question on the verdict form: "Was there negligence on the part of Defendant Tarmac America, Inc. which was a legal cause of damage to plaintiff Sybil Eppler?"
[2] On direct examination of Morris, the following transpired:

Q. How far were you back from her....
A. Yes, at the light I was back approximately 10, 11 feet from her.
[3] On cross-examination of Morris by Eppler's lawyer, the following transpired:

Q. How many cars were in front of Mrs. Eppler's vehicle?
A. I would estimate three cars.
Q. You don't know for sure, though?
A. No, but I estimated it was four in front of me, so she was right in front of me.
Q. Okay. It was Mrs. Eppler's car, and then three more in front of her?
A. Yes, sir.
Q. Now, when the light turned green, do you recall what occurred with regard to the three vehicles in front of Mrs. Eppler's car?
A. Traffic started off, just the way they always do.
Q. Do you have a vivid recollection in your mind as to whether or not the vehicle in front of Mrs. Eppler started off?
A. Yes, as far as I'm concerned, it did.
Q. Okay.
A. All the traffic was moving.
Q. So it's your testimony that the vehicle immediately in front of Mrs. Eppler's vehicle started off?
A. Yes, sir.
[4] On cross-examination of Morris, the following transpired:

Q. So it's your testimony that the vehicle immediately in front of Mrs. Eppler's vehicle started off?
A. Yes, sir.
Q. All right. And then Mrs. Eppler just slammed on brakes without any reason; is that right?
A. That's what I thought.
. . . .
Q. Now, I got to make sure I understand you now. You took off in first gear, you shifted into second gear, and had you given it any gas in second gear?
A. Somewhat, yes.
Q. And then Mrs. Eppler slammed on brakes for no apparent reason, and then you hit the brake; is that right?
A. That's right.
(Emphasis added.)
[5] See, e.g., Pierce v. Progressive Am. Ins. Co., 582 So.2d 712, 714 (Fla. 5th DCA 1991) ("As a matter of law, it is not a substantial and reasonable explanation by Pierce to merely say that the vehicles ahead of him ... stopped abruptly."); see also Kao v. Lauredo, 617 So.2d 775, 777 (Fla. 3d DCA 1993) ("[T]he defendant testified that he was driving in a careful manner, but that plaintiff stopped in an abrupt manner.... The defendant's version of the collision is not sufficient to rebut or dissipate the presumption that his negligence was the sole proximate cause of the accident.").
[6] The district court in Tacher certified conflict with Eppler; Tacher is not currently before this Court.
[7] After the advent of comparative negligence, an unrebutted presumption of negligence no longer means that the negligence of the rear driver must be the "sole proximate cause" of a rear collision. Thus, I would disapprove of language in cases such as Kao v. Lauredo, 617 So.2d 775, 777 (Fla. 3rd DCA 1993), and Pierce v. Progressive American Insurance. Co., 582 So.2d 712, 714 (Fla. 5th DCA 1991), stating otherwise.
[8] A directed verdict on liability includes both the issues of negligence and legal cause. See, e.g., Fla. Std. Jury. Inst. (Civ.) 3.1(d). This instruction is titled, "Directed verdict on liability," and provides:

The court has determined and now instructs you, as a matter of law, that (defendant) was negligent and that such negligence was a legal cause of [loss] [injury] [or] [damage] to (claimant). (Claimant) is therefore entitled to recover from (defendant) for such [loss] [injury] [or] [damage] as is shown by the greater weight of the evidence to have thus been caused.
Id. (brackets and parentheses in original). When a trial court has directed a verdict on the defendant's negligence, the issues for the jury to resolve are causation and damages. See Fla. Std. Jury Instr. (Civ.) 3.1(c).
[9] This is in contrast to other states that provide that the jury may be instructed on the rebuttable presumption of the rear driver's negligence. See, e.g., Bettner v. Boring, 764 P.2d 829, 832 (Colo.1988); Beausoleil v. Vollucci, 711 A.2d 643, 644 (R.I.1998).
[10] The traffic regulations require that the "driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon, and the condition of, the highway." § 316.0895(1), Fla. Stat. (1997).
[11] Because there was a question of the plaintiff's comparative negligence, the directed verdict should only have been on negligence and not as to liability. See Note on use of Fla. Std. Jury Inst. (Civ.) 3.1(d) (instruction on directed verdict on liability "should be given only when the sole issue to be determined by the jury is the matter of damages").
[12] See supra note 8.