786 So.2d 570 (2001)
Colletta P. CLAMPITT, Petitioner,
v.
D.J. SPENCER SALES, et al., Respondents.
No. SC92603.
Supreme Court of Florida.
May 10, 2001.
*571 Eric C. White of Johnson, Vipperman & White, P.A., Gainesville, FL, for Petitioner.
Christopher C. Coleman and Monica C. Sanders of Cameron, Marriott, Walsh, Hodges & Coleman, P.A., Ocala, FL, for Respondent.
SHAW, J.
We have for review D.J. Spencer Sales v. Clampitt, 704 So.2d 601 (Fla. 1st DCA 1997), based on conflict with Pierce v. Progressive American Insurance Co., 582 So.2d 712 (Fla. 5th DCA 1991). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. We quash D.J. Spencer Sales.

I. FACTS
During the morning of August 30, 1993, three vehicles were following one another in the southbound lane of Alternate U.S. 27 south of Bronson, Florida. The lead vehicle, which was driven by Charles Huguley, was a pickup truck hauling a small trailer; the second vehicle, driven by Colletta Clampitt, was an automobile; and the third vehicle, driven by Carl Hetz, was a commercial tractor-trailer rig owned by D.J. Spencer Sales ("Spencer Sales" or "Spencer"). The posted speed limit was fifty-five miles per hour; the weather was clear. The three vehicles were involved in an accident about a mile south of the Bronson *572 city limits and Clampitt was seriously injured. She sued Spencer Sales.[1] Prior to trial, she moved for summary judgment on the issue of fault, contending that Spencer had failed to rebut the presumption of negligence that attaches to the rear driver in a rear-end collision. She submitted Huguley's and Hetz's deposition testimony and Hetz's answers to interrogatories. Spencer submitted no evidence on the issue.
Huguley testified in his deposition as follows: He was traveling south at forty-five to fifty-five miles an hour; he activated his turn signal and began braking one hundred and fifty yards prior to entering the driveway of his place of business; his pickup truck and trailer had turned almost completely off the highway when the trailer was struck from behind by Clampitt's auto. Hetz testified as follows: He was traveling at forty-five to fifty miles per hour; he was following Clampitt's auto by approximately one hundred and twenty feet; although he had an unobstructed view of Huguley's vehicle, he did not know that Huguley was turning until he saw Clampitt's auto strike Huguley's trailer and push the pickup truck and trailer off the road; at that point, he saw Clampitt's auto come to a "dead-stop" on the highway; he slammed on his brakes, left one hundred feet of skid marks, and struck Clampitt's auto; he did not see Huguley's turn signal or brake lights illuminate at any time prior to the accident (although he did testify that the trooper at the scene confirmed that Huguley's turn signals and brake lights were operational); he did not see Clampitt's brake lights illuminate at any time.[2]
The trial court granted summary judgment in favor of Clampitt on the issue of fault. The case proceeded to trial on the issue of damages and the jury returned a verdict of $857,997 for Clampitt.[3] The district court reversed on the summary judgment issue, ruling that the evidence in favor of Spencer Sales was sufficient to overcome the presumption of negligence. This Court granted review based on conflict with Pierce v. Progressive American Insurance Co., 582 So.2d 712 (Fla. 5th DCA 1991), wherein the district court held that an abrupt stop, by itself, is insufficient to overcome the presumption of negligence that attaches to a rear driver.[4]

II. THE APPLICABLE LAW
The rebuttable presumption of negligence that attaches to the rear driver in a rear-end collision in Florida arises out of necessity in cases where the lead driver *573 sues the rear driver. The presumption bears only upon the causal negligence of the rear driver:
The usefulness of the rule is obvious. A plaintiff ordinarily bears the burden of proof of all four elements of negligence-duty of care, breach of that duty, causation and damages. Yet, obtaining proof of two of those elements, breach and causation, is difficult when a plaintiff driver who has been rear-ended knows that the defendant driver rear-ended him but usually does not know why. Beginning with McNulty, therefore, the law presumed that the driver of the rear vehicle was negligent unless that driver provided a substantial and reasonable explanation as to why he was not negligent, in which case the presumption would vanish and the case could go to the jury on its merits.
Jefferies v. Amery Leasing, Inc., 698 So.2d 368, 370-71 (Fla. 5th DCA 1997) (citations omitted).
This Court in Guile v. Boggs, 174 So.2d 26 (Fla.1965), endorsed the rebuttable presumption established in McNulty v. Cusack, 104 So.2d 785 (Fla. 2d DCA 1958), and held that the burden is on the defendant to come forward with evidence that "fairly and reasonably tends to show" that the presumption of negligence is misplaced:
We have stated that the presumption announced in McNulty, and subsequently followed, is rebuttable. It is constructed by the law to give particular effect to a certain group of facts in the absence of further evidence. The presumption provides a prima facie case which shifts to the defendant the burden to go forward with evidence to contradict or rebut the fact presumed. When the defendant produces evidence which fairly and reasonably tends to show that the real fact is not as presumed, the impact of "the presumption is dissipated". Whether the ultimate fact has been established must then be decided by the jury from all of the evidence before it without the aid of the presumption. At this point the entire matter should be deposited with the trier of facts to reconcile the conflicts and evaluate the credibility of the witnesses and the weight of the evidence.
Guile v. Boggs, 174 So.2d at 28-29 (emphasis added).
The Court recently revisited this issue in Eppler v. Tarmac America, Inc., 752 So.2d 592 (Fla.2000). There, Eppler was stopped in a line of vehicles at a red light and when the light turned green all the vehicles accelerated and proceeded forward in a routine fashion for several seconds. Eppler then suddenly-without warning and for no apparent reasonslammed on her brakes and was struck from behind by the defendant's cement-mixer truck. The Court held that under those circumstances the presumption of negligence was overcome:
Based on the foregoing, we agree with the decisions of both the trial and district courts below. Abrupt and arbitrary braking in bumper-to-bumper, accelerating traffic is an irresponsible and dangerous act that invites a collision. Cases involving allegations of such an act are properly submitted to the jury, for the crucible of cross-examination is well-suited for gleaning meritorious from non-meritorious claims. In the present case, the trial court properly denied Eppler's motion for a directed verdict.
Eppler, 752 So.2d at 595-96.

III. THE PRESENT CASE
In the present case, the district court ruled that the presumption of negligence was overcome by the following alleged *574 facts: Clampitt "dead-stopped" in front of Hetz; and Clampitt failed to use her brakes prior to colliding with Huguley's trailer.[5] From these facts, the court reasoned that a jury could infer that Clampitt negligently failed to decelerate gradually as Huguley's vehicle pulled off the highway.[6] This was error.
The present case differs from Eppler wherein the forward driver allegedly made an abrupt and arbitrary stop in bumper-to-bumper accelerating traffic, i.e., a "gotcha" stop. Rather, this case is similar to Pierce v. Progressive American Insurance Co., 582 So.2d 712 (Fla. 5th DCA 1991), and other "sudden stop" cases wherein the forward driver merely stopped abruptly. The court in Pierce explained that a sudden stop standing alone is insufficient to overcome the presumption of negligence:
It is not merely an "abrupt stop" by a preceding vehicle (if it is in its proper place on the highway) that rebuts or dissipates the presumption that the negligence of the rear driver was the sole proximate cause of a rear-end collision. It is a sudden stop by the preceding driver at a time and place where it could not reasonably be expected by the following driver that creates the factual issue.
Pierce, 582 So.2d at 714 (citations omitted). The court in Pierce also rejected the notion that the rear driver can benefit from a claim that the forward driver was negligent in rear-ending the vehicle in front of him or her.[7]
*575 In the present case, the accident took place at midmorning on a clear day on a level stretch of two-lane roadway just outside the Bronson city limits. In the area of the accident, the roadway is bordered by a farm supply store and several other commercial establishments, several apartment complexes and a residential development, and the campus of Central Florida Junior College, all of which maintain entrances and exits on the roadway. Hetz testified that, in spite of his vantage point in the cab (from where he had a clear view of both vehicles in front of him), he did not see Huguley activate his turn signal; he did not see Huguley illuminate his brake lights; he did not see Huguley slow down; and he did not see Huguley turn into his driveway. Nor did he see Clampitt slow down or activate her brake lights. At best, according to Hetz's own testimony, Clampitt made a sudden stop on the roadway ahead and Hetz did not see her until the last minute.
It is well settled that a sudden stop, without more, is insufficient to overcome the presumption of negligence. We also know that-in spite of Hetz's testimony otherwise some of the aforementioned events probably did take place. We know, for instance, that Huguley turned off the highway, that he probably slowed down (from fifty miles per hour) in order to do so, that his brake lights (which were in working order) probably illuminated, and that Clampitt probably slowed down before striking the trailer (she did only slight damage to the trailer). Thus, even interpreting the alleged facts in the light most favorable to Spencer Sales, Hetz appears to have been "asleep at the wheel" of a seventy-six thousand pound vehicle traveling at fifty miles an hour.
Based on this record, Spencer Sales failed to meet the Guile standard: It failed to present evidence that "fairly and reasonably" tends to show that Hetz was not negligent in colliding with Clampitt's auto. The trial court properly granted Clampitt's motion for summary judgment and the district court erred in ruling otherwise.

IV. CONCLUSION
This is a classic "sudden stop" case. Clampitt's auto stopped abruptly on the highway as the result of a collision with Huguley's trailer, and Hetz's tractor-trailer rig was unable to stop in time. Unfortunately, accidents on the roadway ahead are a routine hazard faced by the driving public. Such accidents are encountered far too frequently and are to be reasonably expected. Each driver is charged under the law with remaining alert and following the vehicle in front of him or her at a safe distance.[8]
In effect the law requires all drivers to push ahead of themselves an imaginary clear stopping distance or assured stopping space or adequate zone within which the driven vehicle can come to a stop. Failure to maintain such a zone is normally the sole proximate cause of injuries and damages resulting from the collision of a vehicle with an object ahead. This is why when a vehicle collides *576 with an object ahead of it, including the rear of a leading vehicle, there is a presumption of negligence on the part of the overtaking or following vehicle.
Lynch v. Tennyson, 443 So.2d 1017, 1020-21 (Fla. 5th DCA 1983) (Cowart, J., dissenting). Each driver must be prepared to stop suddenly (particularly during school and business hours on a roadway that is bordered by multiple business and residential establishments and a school, as in the present case). It is logical to charge the rear driver with this responsibility because he or she is the person who is in control of the following distance.
Based on the foregoing we quash D.J. Spencer Sales v. Clampitt, 704 So.2d 601 (Fla. 1st DCA 1997).
It is so ordered.
WELLS, C.J., and HARDING, ANSTEAD, LEWIS and QUINCE, JJ., concur.
PARIENTE, J., concurs in result only with an opinion.
PARIENTE, J., concurring in result only.
I concur in the majority's opinion holding that an abrupt stop by the forward driver is insufficient to overcome the presumption of negligence on the part of the rear driver. See majority op. at 575. As the majority notes "accidents are encountered far too frequently and are to be reasonably expected. Each driver is charged under the law with remaining alert and following the vehicle in front of him or her at a safe distance." Id. at 575.
As observed by the Fifth District in Pierce v. Progressive American Insurance Co., 582 So.2d 712 (Fla. 5th DCA 1991), which we today approve:
It is not merely an "abrupt stop" by a preceding vehicle (if it is in its proper place on the highway) that rebuts or dissipates the presumption.... It is a sudden stop by the preceding driver at a time and place where it could not reasonably be expected by the following driver that creates the factual issue.
Id. at 714 (citation omitted) (emphasis added). As I explained in my dissenting opinion in Eppler v. Tarmac America, Inc., 752 So.2d 592, 597 (Fla.2000) (Pariente, J., dissenting), an abrupt stop at a busy intersection should impose the same obligation on the rear driver as a sudden stop by the forward driver on a highway as in this case. The reason for the forward driver's stop is not the issue, as this factor relates to the issue of comparative fault. See id. Rather, the only issue involved in determining whether the rear driver has overcome the presumption of negligence is whether the stop occurred at a time and place that the rear driver reasonably could have expected. See id. As the Third District observed in Tacher v. Asmus, 743 So.2d 157, 158 (Fla. 3d DCA 1999), review dismissed, 767 So.2d 461 (Fla.2000):
We conclude that a sudden stop by a preceding driver or drivers approaching or going through a busy intersection should be reasonably expected so as to impose a duty on the drivers which follow them to operate their vehicles at a safe distance. It is not at all unusual for vehicles [proceeding] through busy intersections, for example, to have to suddenly brake for pedestrians, emergency vehicles or other drivers running a red traffic light from a cross-street.
As the majority correctly observes in this case, "[e]ach driver must be prepared to stop suddenly (particulary during school and business hours on a roadway that is bordered by multiple business and residential establishments and a school, as in the present case). It is logical to charge the rear driver with this responsibility because *577 he or she is the person who is in control of the following distance." Majority op. at 576. My only dispute is with the majority's distinction of Eppler on the basis that the stop in that case was both "arbitrary" and abrupt. See majority op. at 574. Because I disagree that the stop in Eppler was not reasonably foreseeable for the reasons stated in my dissenting opinion in that case, I concur in the result only in this case.
NOTES
[1] Clampitt also sued Huguley but the trial court dismissed the claim.
[2] Hetz testified as follows:

Q. Okay. From where you were sitting in your rig and from your habits and the way you drive, would you have seen her brake lights, do you believe, had she applied the brakes to her vehicle?
A. Yeah, I would have seen them.
Q. Okay. So you believe she did not hit the brakes then; is that correct?
A. I didn't see them, no.
Q. Okay.
A. Because I don't thinkwell, no.
Q. Okay. But you didn't see brake lights on Mr. Huguley's vehicle either?
A. No.
Q. Okay.
A. Like I said, I didn't see himlike I said, I didn't know for sure he was turning, I didn't even know he was turning until he was [hit], I mean, he was already in motion.
[3] Pursuant to a stipulation of the parties, the court reduced the award to $842,997 due to collateral source benefits already paid to Clampitt.
[4] Clampitt raises an additional issue that is outside the scope of the inter-district conflict and was not the basis this Court's granting of discretionary review.
[5] The district court below summarized the key evidence on the summary judgment issue:

In this case, appellant Hetz, the driver of the rear vehicle, testified that appellee "dead-stopped" in front of him in an area with a posted speed limit of 55 miles per hour. He also testified that after leaving the Bronson city limits, he remained two truck lengths behind appellee's car. Appellant Hetz then stated that when he saw appellee stop on the highway, he hit his brakes and put down 110 feet of skid marks. He further testified that appellee's brake lights did not come on prior to the collision.
D.J. Spencer Sales v. Clampitt, 704 So.2d 601, 603 (Fla. 1st DCA 1997).
[6] The district court below concluded as follows:

Viewing the evidence in a light most favorable to appellants, we conclude appellant Hetz's affirmative testimony concerning appellee's "dead-stop" in front of him and her seeming failure to use her brakes prior to impact with the lead vehicle, constitutes sufficient evidence to overcome the presumption of negligence which attaches to the driver of the rear vehicle involved in a collision. Since the lead driver testified that he used his turn indicators to signal his turn into his business, a jury could reasonably infer that appellee was negligent in failing to decelerate gradually as the lead driver slowed and turned in front of her vehicle. In these circumstances, we conclude the trial court erred in granting the motion for partial summary judgment and in removing the question of negligence from the jury.
D.J. Spencer Sales, 704 So.2d at 603.
[7] See Pierce, wherein the district court ruled as follows:

The second argument [i.e., that the negligence of the first three drivers in rearending the vehicles in front of them inured to Pierce's benefit] is equally fallacious. The presumption of negligence arising from the collision between Boone and Reaves [i.e., the first and second drivers, respectively] inured only in favor of Boone, and against Reaves. Likewise, any presumption of negligence against Tiroff and in favor of Reaves [i.e., the third and second drivers, respectively] arising from a second collision could not benefit Pierce in regard to the third collision where he struck Tiroff.
. . . .
Other than the fact that Reaves and Tiroff each collided with a preceding car, there is no evidence whatsoever of any negligence by either of them to rebut the presumption of Pierce's negligence in regard to the third collision. The burden to produce that evidence was upon Pierce. Even on this appeal, Pierce has not contended that there was any material evidence of negligence on the part of Tiroff or Reaves other than the fact each ran into a preceding vehicle.
Pierce, 582 So.2d at 714-15 (citation omitted).
[8] See section 316.0895(1), Florida Statutes (1993), which provides in relevant part:

316.0895 Following too closely.
(1) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon, and the condition of, the highway.