812 So.2d 601 (2002)
Robert HUNTER, Appellant,
v.
Phillip A. WARD and Dianne L. Putnam, Appellee.
No. 1D01-0139.
District Court of Appeal of Florida, First District.
April 8, 2002.
Tyrie A. Boyer of Boyer, Tanzler & Sussman, Jacksonville, for Appellant.
Susan S. Oosting, Esquire and Harris Brown, Esquire of Brown, Obringer, Beardsley & Decandio, P.A., for Appellee, *602 Phillip A. Ward, Jacksonville; No appearance for Appellee, Dianne L. Putnam.
LEWIS, J.
Robert Hunter, the appellant, filed this personal injury action arising from a rearend collision against Phillip Ward, the appellee. The appellant challenges the trial court's denial of his motions for directed verdict on the issue of liability and his motion for a new trial. Based upon the supreme court's recent decision in Clampitt v. D.J. Spencer Sales, 786 So.2d 570 (Fla.2001), decided after the trial court denied the appellant's motions, and viewing the facts in the light most favorable to the appellee, we conclude that the trial court erred in denying the motions. Consequently, we reverse and remand for entry of a directed verdict in favor of the appellant on the issue of liability and for a new trial on damages.
As the appellant filed a motion for directed verdict, we view all of the evidence in a light most favorable to the appellee. See Ticor Title Guarantee Co. v. Harbin, 674 So.2d 781 (Fla.1st DCA 1996)(stating that in ruling on motions for directed verdict, all conflicts in evidence must be resolved in favor of the non-moving party). On September 17, 1996, the appellant was traveling east in the left-hand lane of Atlantic Boulevard, a four-lane divided highway, in Jacksonville. He attempted a left turn at a break in the grass median designed for turning. However, his truck hitch extended into the left lane of Atlantic Boulevard approximately six inches. Dianne Putnam's vehicle "nose-dived" indicating that she braked hard to avoid the hitch protruding into the left lane. The traffic was heavy in the right-hand land; therefore, she could not pass the appellant's truck. Meanwhile, the appellee turned right onto Atlantic Boulevard into the right-hand lane. However, a beer truck was moving slowly, about five to ten miles an hour, in that lane, so the appellee cleared rear traffic by using his rearview mirror and moved into the left lane. When the appellee saw Putnam's vehicle stopping suddenly, he braked but could not stop in time. He struck her vehicle from behind which caused her vehicle to collide with the appellant's truck.
The appellant filed a complaint for personal injury damages against the appellee.[1] At trial, after the close of all evidence, the appellant moved for a directed verdict on the issue of liability of the appellee. The appellant argued that no rebuttal was made to the presumption of negligence which arises in rear-end collisions. The appellee argued that he properly changed lanes at a reasonable speed but did not see Putnam's vehicle until he moved from behind the beer truck. The trial court held that the appellee's explanation was reasonable and rebutted the presumption; it, therefore, denied the appellant's motion. The issue of negligence was submitted to the jury. The jury declined to find negligence on the part of the appellee. The appellant subsequently moved for a directed verdict, judgment n.o.v. or, in the alternative, a new trial. The trial court also denied this motion.
In Florida, a presumption of negligence attaches to the driver of the rear vehicle in a rear-end collision. See Sistrunk v. Douglas, 468 So.2d 1059, 1060 (Fla. 1st DCA 1985). The rear driver can rebut this presumption by presenting evidence that "fairly and reasonably tends to show" that the presumption of negligence is misplaced. See Gulle v. Boggs, 174 So.2d 26 (Fla.1965); see also Waters v. *603 Williams, 696 So.2d 386 (Fla. 1st DCA 1997). The Florida Supreme Court has further clarified the presumption of negligence in rear-end collisions in two recent cases: Clampitt, 786 So.2d at 570 and Eppler v. Tarmac America, Inc., 752 So.2d 592 (Fla.2000).
In Clampitt, three vehicles were following each other in the southbound lane of Alternate U.S. 27, south of Bronson, Florida. 786 So.2d at 571. The owner of the first vehicle, a pickup truck pulling a trailer, signaled to turn left prior to entering the driveway of his place of business. Id. at 572. His pickup truck and trailer had turned almost completely off the highway when the trailer was struck from behind by Clampitt, the driver of the second vehicle. Id. Clampitt's vehicle came to a "dead stop." Id. The driver of the defendant's commercial tractor-trailer, the rear vehicle following Clampitt, failed to see, despite an unobstructed view of the two vehicles, the truck's turn signal and brake lights. Id. Although he had an unobstructed view of the first vehicle, he did not know that the truck was turning until he saw Clampitt's vehicle strike the pickup truck's trailer and push the pickup truck and trailer off the road. Upon seeing Clampitt's vehicle suddenly stop, he immediately slammed on his brakes but still struck Clampitt's vehicle. Id. At trial, the defendant did not present any additional evidence to rebut the presumption. Id. The district court reversed the trial court's granting summary judgment on the issue of fault in favor of Clampitt, stating that the evidence in favor of the defendant was sufficient to rebut the presumption. Id. However, the supreme court disagreed and quashed the district court's decision. The supreme court held that a sudden stop without more is insufficient to overcome the presumption of negligence. Id. at 575. A sudden stop could have reasonably been expected as the roadway was bordered by a school and multiple business and residential establishments. Id. at 576.
In the second supreme court case, Eppler was stopped in a line of traffic at a stoplight. Eppler, 752 So.2d at 593. The light turned green, and all the vehicles in line accelerated and began moving forward in a routine fashion for several seconds. Id. In the bumper-to-bumper accelerating traffic, Eppler "suddenlywithout warning and for no reasonslammed on her brakes." Id. The defendant struck Eppler from behind. Id. The supreme court held that the presumption of negligence was overcome as Eppler abruptly and arbitrarily stopped in a place not reasonably expected. Id. at 595. Thus, the trial court properly denied Eppler's motion for directed verdict. Id. at 596.
Therefore, if a vehicle suddenly stops in a roadway, but the stop happens at a place and time where it can reasonably be expected as in Clampitt, then the presumption of negligence is not rebutted, and the appellant is entitled to a directed verdict. i.e., However, if the stop is not expected, i.e., "abrupt and arbitrary" in a place not reasonably expected as in Eppler, then the presumption is rebutted, and the appellant is not entitled to a directed verdict.
After analyzing the above cases, we conclude that the facts of the instant case, like Clampitt, fall into the "sudden stop" category and warrant a directed verdict for the appellant on the issue of liability. The appellant was turning left at a crossing designed for that purpose. Because the appellant's truck extended into the left through lane and interfered with traffic, Putnam was suddenly stopping to allow him to complete his turn and clear the left through lane. However, the appellee was unable to stop in time. He struck Putnam's vehicle from behind which caused *604 her vehicle to collide with the appellant's truck. Because a driver can reasonably expect to stop at a median crossing to allow a vehicle turning left to clear the through lane, the appellee failed to present any evidence showing that he was not negligent in hitting Putnam's vehicle, thereby hitting the appellant's vehicle.
In contrast, the dissent focuses solely on Putnam's stopping for support in affirming the trial court. However, even considering the fact that Putnam was stopping suddenly to avoid hitting the appellant's vehicle, she was stopping at a place where a stop could fairly and reasonably have been expected. She was stopping to allow the appellant to make a left turn and completely clear his entire vehicle from the left through lane. As noted above, the appellant was turning left at a crossing designed for that purpose. At such a crossing, a driver can reasonably expect vehicles traveling in the through lane to stop to allow a turning vehicle to clear the through lane. Thus, the appellee could have expected to encounter not only the appellant's vehicle but also Putnam's vehicle. More importantly, unlike Eppler, Putnam's sudden stopping was not in bumper-to-bumper traffic, nor was it an arbitrary, irresponsible, or dangerous act that invited a collision. Compare Clampitt, 786 So.2d at 573, 574 with Eppler, 752 So.2d at 593.
Accordingly, the appellee's testimony that he could not see beyond the beer truck while he was changing lanes is not a substantial and reasonable explanation to overcome the presumption of negligence. Furthermore, as the supreme court stated in Clampitt, "[e]ach driver is charged under the law with remaining alert and following the vehicle in front of him or her at a safe distance." Id. at 575. Once the appellee changed lanes, he was under an obligation to be alert and expect vehicles turning left through a median to slow or even stop traffic.
Therefore, contrary to the dissent's interpretation of the evidence, the facts, viewed in the light most favorable to the appellee, do not show that the appellee rebutted the presumption of negligence. Accordingly, we reverse and remand for entry of a directed verdict in favor of the appellant on the issue of liability and a new trial on the issue of damages.
REVERSED and REMANDED.
VAN NORTWICK, J., specially concurs; KAHN, J., dissents.
VAN NORTWICK, J., specially concurring.
I concur completely in the opinion of Judge Lewis. I write solely to point out that, in view of Ward's blind change from the right to left lane, his sudden discovery of Putnam's car could not be deemed "a classic surprise" sufficient to overcome the presumption of negligence under Eppler v. Tarmac Am., Inc., 752 So.2d 592, 593-5 (Fla.2000).
Section 316.089(1), Florida Statutes (2000), provides that when, as here, a road is divided into two or more clearly marked traffic lanes, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." The evidence in the record before us is undisputed that Ward was traveling behind a truck in the right lane; that the truck obscured his vision so that he was unable to see the traffic ahead in the left lane; that before he moved from the right to the left lane he checked for approaching traffic behind him in the left lane, see section 316.085(2), Florida Statutes (2000); that before he changed lanes he did not ascertain the status of traffic in front of *605 him in the left lane; and that upon moving into the left lane he suddenly came upon Putnam's car as it was making a sudden stop.
To overcome the presumption of negligence that attaches to the rear driver in a rear-end collision, the rear driver has the burden "to come forward with evidence that `fairly and reasonably tends to show' that the presumption of negligence is misplaced...." Eppler, 752 So.2d at 594 (quoting Guile v. Boggs, 174 So.2d 26, 28-29 (Fla.1965)). In Eppler, the Court held that the presumption was misplaced because the "abrupt and arbitrary stop" was not reasonably expected under the circumstances. Eppler, 752 So.2d at 594-5 (emphasis theirs). The Court emphasized the significance that, to rebut the presumption, the stop must be arbitrary, not simply sudden. Id. at 595 ("Abrupt and arbitrary braking in bumper-to-bumper, accelerating traffic is an irresponsible and dangerous act that invites a collision." (emphasis theirs)).
When driving on a busy four-lane roadway, a driver can reasonably expect to encounter trafficeven stopped or stopping trafficwhen attempting to change lanes. Thus, a driver has a duty to determine the status of the traffic ahead to enable the driver to ascertain whether a lane change can be made safely. See § 316.089(1), Fla. Stat. (2000).
Here, when Ward changed lanes blindly, it was reasonably expected that he might happen upon stopped traffic. In fact, it would have simply been blind luck if he had not. Thus, even viewing the evidence in a light most favorable to Ward, Ward's failure to check out the traffic in the left lane before making the lane change caused whatever "surprise" he experienced. As a result, I cannot conclude that Ward has shown that the presumption of negligence is misplaced in the present case. If anything, the validity of that presumption is supported by the circumstances of this case.
KAHN, J., dissenting.
I am unable to agree with reversal in this case. The facts developed at trial, viewed in a light most favorable to appellee Ward, as the non-moving party, are sufficient to rebut the presumption of negligence relied upon by the majority. Also, even assuming negligence by Ward, the facts do not, as a matter of law, support a finding of causation. See, e.g., Great S. Peterbilt, Inc. v. Geiger, 616 So.2d 1127, 1128 (Fla. 1st DCA 1993) ("In order to recover in a negligence case, the plaintiff must show that the defendant was negligent and that the negligent act caused the injuries sustained by the plaintiff."). Accordingly, I dissent.
As the majority explains, in reviewing the trial court's denial of Hunter's motion for a directed verdict, we must view the facts from Ward's perspective. See, e.g., Thor Bear, Inc. v. Crocker Mizner Park, Inc., 648 So.2d 168, 171 (Fla. 4th DCA 1994) ("In considering a motion for a directed verdict, the trial court is required to view the evidence in the light most favorable to the nonmoving party and draw all reasonable conclusions and inferences favorable to the nonmoving party.... A directed verdict should not be granted unless no view of the evidence could support a verdict for the nonmoving party."). Also, "[i]n reviewing the propriety of a directed verdict, an appellate court must view the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party." Shultz v. Johnson, 654 So.2d 567, 569 (Fla. 1st DCA 1995). Moreover, we must draw all favorable inferences in favor of Ward. As the majority notes, Hunter, attempting to make a left turn at the break of the median of Atlantic *606 Boulevard, stopped his truck and his bumper hitch protruded into the eastbound traveled portion of the roadway. Ward testified that he was traveling about 10 miles per hour as he approached the rear of the beer truck in the right-hand lane. While following the beer truck, Ward was completely unable to see any obstruction ahead and to his left. He signaled to move into the left lane, cleared rear traffic by using his mirror and looking over his shoulder, and then made the lane change. He was unable to see the Putnam vehicle until he moved to the left lane. As Ward moved into the left lane, he saw Putnam's car "doing a nose dive because she had the brakes on real hard...." Ward immediately slammed on his brakes, but could not avoid the accident.
In considering the motion for directed verdict, the trial court properly drew permissible inferences from Ward's testimony. In particular, Ward made a safe lane change, but was then confronted with Putnam's abrupt stop, attributable to the fact that Hunter's bumper hitch, but not his more conspicuous truck, protruded into the traveled portion of Atlantic Boulevard. Ward's testimony thus supports an inference that Putnam made an unexpected stop for no apparent reason.
On this state of facts, I fail to see how the trial court could not have allowed the case to go to the jury. In Eppler v. Tarmac America, Inc., the driver of the lead vehicle "suddenlywithout warning and for no reasonslammed on her brakes." 752 So.2d 592, 593 (Fla.2000). The supreme court characterized the abrupt and arbitrary stop of the lead vehicle as "a classic surprise," and approved denial of a directed verdict. Id. at 594. The majority would, however, decide the present case not under Eppler, but under Clampitt v. D.J. Spencer Sales, 786 So.2d 570 (Fla. 2001). My reading of Clampitt, does not require such a result.
In Clampitt, the vehicle ultimately found to be at fault, driven by Hetz and owned by D.J. Spencer Sales, was behind both the lead vehicle (Huguley) and the second vehicle (Clampitt). 786 So.2d at 571. The roadway involved in that case had two-way traffic and the driver's view was completely unobstructed. Id. at 572. Hetz testified he was following Clampitt by approximately 120 feet and that, although he had an unobstructed view of the Huguley vehicle, he did not notice that the Huguley vehicle was stopped for a left turn until he saw Clampitt's auto strike the Huguley vehicle and push that vehicle off the road. Id. At that point, Hetz, slammed on brakes and struck Clampitt in the rear. Id. As the supreme court observed:
Hetz testified that ... he did not see Huguley [lead vehicle] activate his turn signal; he did not see Huguley illuminate his brake lights; he did not see Huguley slow down; and he did not see Huguley turn into his driveway. Nor did he see Clampitt slow down or activate her brake lights. At best, according to Hetz's own testimony, Clampitt made a sudden stop on the roadway ahead and Hetz did not see her until the last minute.
Id. at 575. The opinion indicates no relevant facts that would detract from a conclusion that Clampitt simply failed, despite an unobstructed view and a clear roadway, to control his vehicle and stop in time to avoid colliding with the vehicle in front of him.
The present case is factually, and I submit, legally, different. The trial judge could have concluded that a protruding bumper hitch is not the same as a vehicle lawfully stopped to make a left turn. The trial court could have also concluded, based upon Ward's testimony, that Ward *607 made a lawful lane change and found himself confronted with the Putnam car coming to an emergency stop because her path was unexpectedly impeded by a vehicle stopped to turn left, but by the far less conspicuous bumper hitch.
Once the trial court denied the motion for directed verdict, the jury could have found either that Ward was not negligent, or that the sole cause of the accident was the protruding bumper hitch. See Great S. Peterbilt, Inc., 616 So.2d at 1128. The present case, unlike Clampitt, is fact-intense, and the trial court properly recognized that. Accordingly, I would affirm the final judgment in favor of appellee Ward.
NOTES
[1] The appellant also filed a complaint against Putnam arising from this accident. However, the trial court granted final summary judgment in favor of Putnam.