LABARGA, J.
We have for review Charron v. Birge, 37 So.3d 292 (Fla. 5th DCA 2010), a case in which the Fifth District Court of Appeal certified, by separate order, conflict with the Fourth District’s decision in Cevallos v. Rideout, 18 So.3d 661 (Fla. 4th DCA *353 2009).[1] The certified conflict involves the interaction of Florida’s comparative negligence system of tort recovery and a rebut-table presumption that has been imposed by Florida decisional law in rear-end motor vehicle collision cases. We have jurisdiction. See, Art. V, § 3(b)(4), Fla. Const. We hold consistent with the Fifth District’s decision in Charron that because tort recovery in Florida is governed by the principles of comparative negligence, the presumption that a rear driver’s negligence is the sole cause of a rear-end automobile collision can be rebutted and its legal effect dissipated by the production of evidence from which a jury could conclude that the front driver was negligent in the operation of his or her vehicle. Accordingly, we disapprove of the Fourth District’s decision in Cevallos, which reaches a contrary holding.[2]
Under Florida decisional law, there is a rebuttable presumption of negligence that attaches to the rear driver in a rear-end motor vehicle collision case. See generally Eppler v. Tarmac America, Inc., 752 So.2d 592, 594 (Fla.2000) (explaining origins of rear-end presumption). Unless this presumption is rebutted, the beneficiary of the presumption is entitled to judgment thereon as a matter of law. Id. Here, we address the legal issue of whether a party seeking to rebut the presumption may do so by producing evidence from which a jury could find that the front driver was negligent and at least comparatively at fault in causing the collision. We first provide a factual and procedural history of the instant case, and then explain how the rear-end presumption, established in an era of contributory negligence, operates in Florida’s current system of tort recovery.
BACKGROUND
This case emanates from a motor vehicle accident that occurred on February 25, 2007, on U.S. Highway 17-92 in Sanford, Florida. The plaintiff, Crystal Charron, was a passenger on a motorcycle that flipped over when the driver of the motorcycle unsuccessfully attempted to avoid a collision with the rear of an automobile driven by the defendant, Warren Birge. The owner and driver of the motorcycle upon which Charron was riding is not a party to this case.[3]
Although the eyewitness accounts of the events leading up to the crash in this case are quite divergent, the factual disputes relating to the reasonableness and care with which Birge operated his automobile immediately preceding the accident were not submitted to a jury for resolution. See Charron, 37 So.3d at 296. Instead, Birge moved for and was granted final summary judgment in his favor on the basis that *354 Charron could not rebut the presumption of negligence that attached to the driver of the motorcycle as the rear driver in a rear-end collision case. See id. at 295-96.
Charron appealed the final summary judgment. The Fifth District reversed because it concluded that Charron produced evidence from which a jury could find that Birge was negligent and at least comparatively at fault in causing the collision. See Charron, 37 So.3d at 299 (“[T]he issue properly framed is ... whether there is record evidence that Birge was negligent as the forward driver and solely caused, or caused in connection with [the driver of the motorcycle], the injuries to Charron.”). As reported by the Fifth District in Charron, the facts of this case when viewed in the light most favorable to the plaintiff[4] provide a basis for a finder of fact to conclude that Birge, while driving thirty-five miles per hour on a thoroughfare that was unimpeded by traffic or traffic signals, suddenly slammed on his brakes for no objective reason — and, further, that he did so in an abrupt and surprising manner to those sharing the roadway with him. Id. at 295, 298-99. In addition, the facts viewed in the light most favorable to the plaintiff permit a finding that because of the unexpected and unusual nature of Birge’s stop, the driver of the motorcycle, who was following Birge’s automobile at a reasonable distance, was required to take evasive action which caused the motorcycle to flip over, throwing Charron onto the roadway.[5] Id. at 295.
The Fifth District concluded that the facts regarding the reasonableness and care with which Birge operated his vehicle were such that a jury could permissibly find that Birge operated his vehicle unreasonably under the circumstances and that Birge’s negligence was at least one of the proximate causes of the collision. Id. at 298-99. The Fifth District held that, because tort recovery under Florida law is governed by principles of comparative fault, the presumption of negligence that attaches to a rear driver in a rear-end collision case is either rebutted or is otherwise not conclusive where there is a sufficient evidentiary basis for a jury to find negligence on the part of the front driver. Id. at 297 (“[T]o the extent that there exists evidence sufficiently demonstrating that Birge was negligent as the forward driver, summary judgment against Char-ron is improper whether or not the presumption of Smith’s negligence as the following driver was rebutted.”). Based on *355 its conclusion, the Fifth District reversed the final summary judgment entered against Charron and remanded the case to the trial court.[6] Id. at 299.
In reaching its disposition in Charron, the Fifth District cited to numerous decisions from various district courts of appeal in Florida that have similarly held that the rear-end presumption can be rebutted or overcome by the production of evidence from which a jury could find negligence on the part of the front driver.[7] The court in Charron also acknowledged, but expressed disagreement with, Cevallos. In Cevallos, the Fourth District concluded that the presumption of negligence that attaches to a rear driver in a rear-end collision ease cannot be rebutted by the production of evidence of negligence on the part of the front driver. Additionally, the Fourth District concluded that a claim for damages filed by a rear driver in a rear-end collision case is barred as a matter of law, unless the rear driver establishes a complete absence of negligence on his or her part. Id. at 297 n. 6 (citing Cevallos, 18 So.3d at 661).
We are now called upon to decide whether the presumption of rear-driver negligence can be rebutted or overcome by the production of evidence from which a jury could find that the front driver was negligent and that such negligence was one of the proximate causes of the collision, as was decided by the Fifth District in Charron. Or contrarily, we must decide whether the party seeking to rebut the rear-end presumption must establish a complete absence of negligence on the part of the rear driver to maintain a claim, as was concluded in Cevallos. We begin by noting that recovery in Florida negligence cases is predicated on the principles of comparative negligence, mandated both by enactment of the Florida Legislature and this Court’s decision in Hoffman v. Jones, 280 So.2d 431 (Fla.1973).
Contributory Negligence Replaced by Comparative Negligence
On July 10, 1973, this Court issued its decision in Hoffman and, in so doing, replaced Florida’s contributory negligence rule[8] with a system of tort recovery based *356 on a “pure form” of comparative negligence. Hoffman, 280 So.2d at 438 (“If plaintiff and defendant are both at fault, the former may recover, but the amount of his recovery may be only such proportion of the entire damages plaintiff sustained as the defendant’s negligence bears to the combined negligence of both the plaintiff and the defendant.”). In Hoffman, the Court announced that “one of the most pressing social problems” was that of automobile accidents, and the primary reason for eliminating a system founded on a rule of contributory negligence — whereby any negligence on the part of the plaintiff bars all recovery in a suit premised on the defendant’s negligence — was to secure a just and adequate system of compensation where even a negligent plaintiff can recover damages in proportion to the defendant’s comparative fault. Id. at 436-47.
The specific holding of the Court in Hoffman was announced thusly:
Therefore, we now hold that a plaintiff in an action based on negligence will no longer be denied any recovery because of his contributory negligence.
If it appears from the evidence that both plaintiff and defendant were guilty of negligence which was, in some degree, a legal cause of the injury to the plaintiff, this does not defeat the plaintiffs recovery entirely. The jury in assessing damages would in that event award to the plaintiff such damages as in the jury’s judgment the negligence of the defendant caused to the plaintiff. In other words, the jury should apportion the negligence of the plaintiff and the negligence of the defendant; then, in reaching the amount due the plaintiff, the jury should give the plaintiff only such an amount proportioned with his negligence and the negligence of the defendant.
Id. at 438 (citation omitted). This system of recovery was not adopted to solely benefit plaintiffs. Id. at 437 (“The rule of contributory negligence is a harsh one which either places the burden of a loss for which two are responsible upon only one party or relegates to Lady Luck the determination of the damages for which each of two negligent parties will be liable.”). Rather, it also permits a defendant to diminish a plaintiffs recovery based on the percentage of the plaintiffs own fault.[9] Additionally, a defendant can further diminish his liability to the plaintiff based on the comparative fault of others, including those negligent nonparties properly pled and proven as such by the defendant. See e.g., Fabre v. Marin, 623 So.2d 1182, 1186 (Fla.1993) (“Liability is to be determined on the basis of the percentage of fault of each participant to the accident and not on the basis of solvency or amenability to suit of other potential defendants.”); see also § 768.81(3)(a), Fla. Stat. (2006) (permitting defendant to plead fault of nonparty to diminish plaintiffs recovery).
*357 Although in Hoffman we acknowledged that we were imposing a significant, substantive change in the law relating to negligence claims, we declined to provide specific rulings on the multitude of potential conflicts that would likely arise from the imposition of a new system of tort recovery. 280 So.2d at 439. Instead, to guide the bench and bar, we stated:
We are fully confident that the trial court judges of this State can adequately handle any problems created by our change to a comparative negligence rule as these problems arise. The answers to many of the problems will be obvious in light of the purposes for which we adopt the rule stated above:
(1) To allow a jury to apportion fault as it sees fit between negligent parties whose negligence was part of the legal and proximate cause of any loss or injury; and
(2) To apportion the total damages resulting from the loss or injury according to the proportionate fault of each party.
Id. Following our opinion in Hoffman, the Florida Legislature in 1986 codified the Court’s adoption of a system of comparative negligence, and its concomitant abol-ishment of the rule of contributory negligence, by enacting section 768.81(l)-(5), Florida Statutes (1986 supp.) (Comparative fault). See ch. 86-160, § 60, at 755-56, Laws of Fla.
On the date of the accident here, and at the time of the entry of final summary judgment against the plaintiff,[10] section 768.81(2) & (3), Florida Statutes (2006) (Comparative fault), read as follows:
(2) EFFECT OF CONTRIBUTORY FAULT. — In an action to which this section applies [negligence cases][11], any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and non-economic damages for an injury attributable to the claimant’s contributory fault, but does not bar recovery.
(3) APPORTIONMENT OF DAMAGES. — In cases to which this section applies [negligence cases], the court shall enter judgment against each party liable on the basis of such party’s percentage of fault and not on the basis of the doctrine of joint and several liability.
§ 768.81(2),(3), Fla. Stat. (2006) (emphasis added). Based on the foregoing, it is clear that Florida’s system of comparative negligence was implemented for the express purpose of allowing recovery in negligence cases based on a jury’s allocation of comparative fault — on a percentage basis— among all individuals who were negligent in bringing about an injury. Under the clear terms of section 768.81(4)(a), Florida Statutes (2006), this substantive means of tort recovery applies to “negligence cases,” a broad class of cases that, as defined by statute, in no way excludes those negligence eases arising from rear-end motor vehicle collisions.[12] Contrary to Cevallos, *358 and consistent with the result reached in Charron, the plain and unambiguous language of section 768(2), Florida Statutes (2006), provides that a plaintiffs contributory fault in a negligence action “does not bar recovery,” but rather diminishes proportionately the amount of his recovery. See § 768.81(2), Fla. Stat. Regardless of whether an injury is caused by the fault of a front driver, a rear driver, or both, the dictates of section 768.81(3), Florida Statutes (2006), entitle a plaintiff to judgment “against each” liable party, on the basis of that party’s “percentage of fault.” See § 768.81(3), Fla. Stat. (2006). Thus, the disposition reached in Charron is consistent with Florida’s comparative negligence statute and the holding of Cevallos is not.[13]
We note that the Fourth District’s decision in Cevallos departs from the holdings in Pollock and Cleaveland — two cases where the Fourth District concluded, consistent with principles of comparative negligence, that the rear-end presumption is rebutted or overcome where there is evidence from which a jury could find negligence on the part of the front driver. In Cevallos, the Fourth District acknowledged its prior holding in Pollock that under Florida’s system of comparative negligence, a rear driver, even one who could not rebut the presumption of his or her own negligence could recover damages proportionate to the front driver’s comparative fault. See 18 So.3d at 664. Nevertheless, the Cevallos court attempted to distinguish Pollock on the basis that in that case, both the front and rear drivers had filed claims for damages against one another. 18 So.3d at 664. This factual distinction, however, bears no meaningful relationship to the principles that under-gird a system of tort recovery founded on comparative negligence.[14] Under Florida’s system of comparative negligence, recovery is to be allocated by the proportionate fault of all individuals whose negligence contributed to the injury, whether or not said individuals have filed claims. See § 768.81(2), (3), Fla. Stat. (2006). Nonetheless, by so distinguishing its holding in Pollock, the Cevallos court implied that different rules of substantive law should apply in rear-end collision cases dependent upon the relatively arbitrary fact of whether the front and rear drivers have filed competing claims against one another. Such a result demonstrates that the holding in Cevallos is incompatible with a system of tort recovery founded on comparative fault and the underlying purposes for same.
In reaching its conclusion in Cevallos, the Fourth District did not address the statutory authority which mandates that recovery in negligence cases be governed by the principles of comparative *359 fault. Instead, the Cevallos court concluded that because the negligence case before it was a rear-end collision case, a different system of recovery should apply. See 18 So.3d at 664. As we explain below, however, the rear-end presumption is not a substantive rule of law that supersedes Florida’s comparative negligence system of tort recovery. Rather, it is an evidentiary tool imposed by decisional law to facilitate a particular type of negligence case, one that is applicable where the evidence is insufficient to create a jury question on the relevant issues of fault.
The Rear-End Presumption
In Bellere v. Madsen, 114 So.2d 619, 621 (Fla.1959), a case decided when recovery from a negligence action under Florida law was limited by the rule of contributory negligence, this Court stated:
It has also been held, and we agree, that where a defendant runs into the rear of plaintiffs car while plaintiff is stopped for a traffic light or at an intersection, there is a presumption of negligence of the defendant on which the plaintiff would be entitled to recover in the absence of an explanation by the defendant.
Id. (citing to Shedden v. Yellow Cab Co. of Miami, 105 So.2d 388, 389 (Fla. 3d DCA 1958), and McNulty v. Cusack, 104 So.2d 785 (Fla. 2nd DCA 1958)). Subsequent to Bellere, this Court explained that the presumption that arises in rear-end collision cases is a legal construct that “arises out of necessity” because the front driver in a rear-end collision is usually in a poor position to observe, and thus introduce evidence on, the cause of the collision.[15] See also Eppler, 752 So.2d at 594 (explaining that rear-end presumption “arises out of necessity” in rear-end collision cases, and its usefulness relates to front driver’s usual lack of knowledge as to why he was rear-ended); see also Gulle v. Boggs, 174 So.2d 26, 28 (Fla.1965) (explaining rear-end presumption is a vanishing presumption “constructed by the law to give particular effect to a certain group of facts in the absence of further evidence.”); Clampitt v. D.J. Spencer Sales, 786 So.2d 570, 572-73 (Fla.2001) (same). The Court has stated that the fact that is presumed upon the occurrence of a rear-end collision is that the rear driver’s negligence was “the sole proximate cause of [a rear-end collision].” See Clampitt, 786 So.2d at 575. Nevertheless, this Court has consistently held that the presumption of negligence imposed on the rear driver in a rear-end collision case is a rebuttable presumption, one that vanishes and loses its legal effect where evidence is produced from which a jury could conclude that the “real fact is not as presumed.” [16] Eppler, 752 So.2d at 594; see *360 also Clampitt, 786 So.2d at 573; Gulle v. Boggs, 174 So.2d at 28-29 (explaining that the rear-end presumption “disappear[s]” when facts appear, and “facts are deemed to appear” when evidence is produced from which such facts “may be found.”). Further, we have held that where a set of facts is produced that “fairly and reasonably tends to show” that the presumption is misplaced or that the “real fact is not as presumed,” the presumption is rebutted and all issues of disputed fact regarding negligence and causation should be submitted to the jury to make a finding of fault without the aid of the presumption. See Eppler, 752 So.2d at 594, 595-96 (citing Gulle, 174 So.2d at 28-29 (emphasis omitted)).
ANALYSIS
Although this Court has not expressly addressed the issue now before us, we have consistently held that the presumption of rear-driver negligence “bears only upon the causal negligence of the rear driver,” [17]and thus, does not speak to or touch upon any factual or legal issue regarding the negligence of the front driver. Significantly, this Court has never held that the rear-end presumption bars a claim for damages of a rear driver or others in the rearward zone of danger where there is evidence from which a jury could conclude that the front driver defendant was negligent and comparatively at fault in causing the collision. Nor has this Court held, as the Fourth District did in Cevallos, that negligence claims arising from rear-end motor vehicle collisions are uniquely governed by a de facto rule of contributory negligence, or some other alternative principle of law, in derogation of the principles of comparative negligence otherwise commanded by statute and this Court’s holding in Hoffman}[18] Instead, the rear-end presumption has never been recognized as anything more than an evi-dentiary tool that facilitates a particular *361 type of negligence case by filling an evi-dentiary void where the evidence is such that there is no relevant jury question on the issue of liability and causation. See Eppler, 752 So.2d at 594 (explaining that the rear-end presumption is a rebuttable presumption constructed by law to give effect to a certain group of facts in the absence of further evidence); see also Gulle, 174 So.2d at 28-29 (explaining that “[pjresumptions disappear when facts appear; and facts are deemed to appear when evidence is [produced] from which [facts] may be found” by the trier of fact). Based on the foregoing, we hold that under Florida law, negligence claims, including those arising from rear-end motor vehicle collisions, are governed by the principles of comparative fault prescribed by statute and this Court’s decision in Hoffman. We further hold that the rear-end presumption is an evidentiary tool to facilitate a particular type of negligence case where there is an absence of a jury question on the issue of comparative fault; it is not an alternate means of tort recovery in derogation of Florida’s well-established system of recovery based on comparative negligence.[19] Accordingly, because rear-end collision cases are substantively governed by the principles of comparative fault, we hold that where evidence is produced from which a jury could conclude that the front driver in a rear-end collision was negligent and comparatively at fault in bringing about the collision, the presumption is rebutted and the issues of disputed fact regarding negligence and causation should be submitted to the jury. Further, consistent with our prior decisions, we also hold that where the presumption of rear-driver negligence is rebutted, the legal effect of the presumption is dissipated, and the presumption is reduced to the status of a permissible inference or deduction from which the jury may, but is not required to, find negligence on the part of the rear driver. See Gulle, 174 So.2d at 29 (“When the matter goes to the jury in this posture it must be without the aid of the presumption, which has been reduced to the status of a permissible inference or deduction which the jury may or may not draw from the evidence before it.”).
Finally, although we approve of the result reached by the Fifth District in Charron, we disagree with the Fifth District’s alternative conclusion that the rear-end presumption is not applicable or available as an evidentiary tool in those rear-end collision cases where the plaintiff is not a rear driver. See Charron, 37 So.3d at 297 (“The presumption clearly *362 does not apply where a passenger of the following vehicle sues the lead driver for his negligence.”). As we have explained, Florida’s comparative negligence system dictates that recovery be apportioned and diminished based on the comparative fault of all individuals whose negligence contributed to cause an injury, including properly pled and proven nonparties. The presumption is operable, however, only where there is an absence of evidence creating a jury question on the legal cause of a rear-end collision other than the presumed negligence of the rear driver.
Accordingly, in those cases where there is an absence of evidence that would create a jury question as to the legal cause of a rear-end collision other than the presumed negligence of the rear driver, it should not matter whether the plaintiff is the driver of the front or rear car, or the passenger of either. Under the equitable principles of comparative negligence, a consistent legal result should be achieved in describing the legal cause of a collision, regardless of which of the participants to the accident have filed claims for damages. Thus, we hold that the presumption that the rear driver’s negligence is the sole cause of a rear-end motor vehicle collision is available in rear-end collision cases whether the plaintiff is the driver of the front or rear vehicle or a passenger in either, and regardless of whether the driver of the rear vehicle is a party to the litigation.
CONCLUSION
For the foregoing reasons, we approve of the disposition reached by the Fifth District in Charron v. Birge, 37 So.3d 292 (Fla. 5th DCA 2010), and disapprove the Fourth District’s decision in Cevallos v. Rideout, 18 So.3d 661 (Fla. 4th DCA 2009).
It is so ordered.
PARIENTE, LEWIS, and QUINCE, JJ., concur.
POLSTON, C.J. and CANADY, J., concur in result.
PERRY, J., recused.

. We granted review in Cevallos based on express and direct conflict with the First District’s decisions in Edward M. Chadbourne, Inc. v. Van Dyke, 590 So.2d 1023 (Fla. 1st DCA 1991), and Johnson v. Deep S. Crane Rentals, Inc., 634 So.2d 1113 (Fla. 1st DCA 1994). Our decision in Cevallos is released contemporaneously with our decision herein. Cevallos v. Rideout, 107 So.3d 348, 2012 WL 5869636 (Fla.2012).

. In Cevallos, the Fourth District held that a rear driver in a rear-end collision case is required to “establish the absence of negligence on [his or] her own part” to pursue a claim based on the negligence of the front driver. See 18 So.3d at 664 (disagreeing with plaintiff’s argument that "a lead-driver defendant cannot use the presumption as a shield to require a rear-driver plaintiff to establish the absence of negligence on [his or] her own part to pursue her claim.”) (internal quotation marks omitted).

.In Charron, the Fifth District explained that William Smith, the owner and driver of the motorcycle, initially filed suit against Birge, but thereafter filed a notice of voluntary dismissal based on a settlement. 37 So.3d at 293 n. 1.

. Because Charron's claim was disposed of by final summary judgment based on the defendant Birge’s motion for summary judgment, the Fifth District appropriately based its disposition on a view of the facts cast in the light most favorable to Charron, the plaintiff. See Moore v. Morris, 475 So.2d 666, 668 (Fla.1985) (explaining in instance of summary judgment court must draw every possible inference in favor of party against whom summary judgment is sought). As we explained in McCain v. Florida Power Corp., where there is sufficient evidence from which a reasonable juror could make a finding of negligence on the part of the defendant, any disputes in the evidence should be resolved by a jury, not the courts. 593 So.2d 500, 504-05 (Fla.1992).

. We do not pass on the veracity of the factual assertions made by the witnesses to the accident. To be certain, we acknowledge that other facts in the record could support a finding that the motorcycle upon which Char-ron was riding was following Birge’s vehicle too closely under the circumstances, and that Birge neither slammed on his brakes nor stopped his car at all. Further, the facts viewed in the light most favorable to Birge establish a basis for a reasonable finder of fact to conclude that in the moments before the collision, Birge merely slowed his car down in a reasonable, cautious, and foreseeable manner, to avoid a potential collision with a vehicle that was merging into his path from a side road that was governed by a yield sign. See id. at 293.

. The Fifth District also concluded that summary judgment was improperly entered against Charron, because plaintiff Charron was a rear passenger, and the presumption of negligence that arises under Florida law in the instance of a rear-end collision attaches to only rear drivers. As explained below, we disagree with this alternate rationale. Nevertheless, because we hold that the rear-end presumption is rebutted and its legal effect dissipated where evidence of comparative negligence on the part of the front driver is produced — a condition that was met here— our disagreement on this point does not change the disposition reached by the Fifth District in Charron.

. See, e.g., Van Dyke, 590 So.2d at 1024 (explaining that introduction of evidence that lead driver was negligent in causing rear-end collision raises a question of comparative fault to be resolved by the jury, notwithstanding the presumption of negligence that might have attached to rear driver); Pollock v. Goldberg, 651 So.2d 721, 722-24 (Fla. 4th DCA 1995) (concluding where rear driver counter-plaintiff did not "dissipate” presumption of her negligence, verdict could not be directed against rear driver where evidence established a basis for jury to conclude that front driver was comparatively negligent in causing collision); Cleaveland v. Florida Power & Light, Inc., 895 So.2d 1143, 1145 (Fla. 4th DCA 2005) ("We conclude that, here, where there is evidence of lead driver negligence, the rear end collision rule does not bar [the rear-ending driver’s] claim”); Jefferies v. Amery Leasing, Inc., 698 So.2d 368, 371 (Fla. 5th DCA 1997) (“If it is sufficiently demonstrated that the lead driver was negligent as well, the jury should pass upon the question of shared liability and apportionment of damages”).

.We have explained that the "gist of the doctrine of contributory negligence is that the *356 person injured should not recover when it appears that the injury would have been avoided if the injured person had exercised reasonable care.” West v. Caterpillar Tractor Co., Inc., 336 So.2d 80, 90 (Fla.1976).

. In Hoffman, we noted that one of the considerations that led to the adoption of comparative negligence was a concern that juries were ignoring instructions on contributory negligence to the detriment of defendants, to deliver some measure of "rough justice” to the injured party. 280 So.2d at 437 ("[Tjhere is something basically wrong with a rule of law that is so contrary to the settled convictions of the lay community that laymen will almost always refuse to enforce it, even when solemnly told to do so by a judge whose instructions they have sworn to followf.j”) (internal citations omitted). Accordingly, an allowance for the reduction of a plaintiff’s recovery based on comparative negligence serves a beneficial purpose for defendants as well.

. The wording of section 768.81(2)-(3), amended as of June 23, 2011, after the filing of the initial brief here, is slightly altered from, but does not change the relevant substance of, the provisions in effect for this case. See ch.2011-215, § 1 at 3318, Laws of Fla.; § 768.81(2), (3), Fla. Stat. (2012).

11. See § 768.81(4)(a), Fla. Stat. (2006) (Applicability) ("This section applies to negligence cases.”).

.Section 768.8 l(4)(a), Florida Statutes (2006), provided:
This section [comparative fault] applies to negligence cases. For the purposes of this section, "negligence cases” includes, but is not limited to, civil actions for damages based upon theories of negligence, strict liability, products liability, professional malpractice whether couched in the terms of contract or tort, or breach of warranty and like theories. In determining whether a *358 case falls within the term “negligence cases,” the court shall look to the substance of the action and not the conclusory terms used by the parties.
Id. The current statutory definition of "negligence action” is located in section 768.81(l)(c), Florida Statutes (2012), and is as broad as the definition relevant here. •

. The rule of recovery announced in Cevallos would ostensibly entitle a negligent front driver plaintiff to full damages. Similarly under the reasoning expressed by the court in Cevallos, a comparatively negligent front driver would apparently be insulated or shielded from liability to his passengers and those in the rearward zone of danger regardless of the presence of comparative negligence on the part of the front driver. Nevertheless, both section 768.81(2),(3) and this Court’s holding in Hoffman command a different result.

. The Fourth District in Cevallos made no mention of its holding in Cleaveland—"We conclude that, here, where there is evidence of lead driver negligence, the rear end collision rule does not bar [the rear-driver]’s claim” — -a case that only involved the claim of a rear driver plaintiff. 895 So.2d at 1144.

. The facts in Shedden demonstrate the apparent need for the presumption as an eviden-tiary device for plaintiffs that are inexplicably rear-ended. In Shedden, the plaintiffs, a husband and wife, were sitting in their automobile that had been halted for “two to three minutes” in a line of traffic. Shedden, 105 So.2d 388. While in this state of immobility, the plaintiffs’ car was rear-ended by a taxi cab owned by the defendant, causing the plaintiffs to suffer injury; however, no explanation was offered as to why the taxi cab struck the rear of the plaintiff's vehicle. 105 So.2d at 388. Based on the plaintiff's failure to introduce evidence of negligence on the part of the rear-ending driver, the trial court directed a verdict for the defendant and against the plaintiffs. On appeal, the Third District, by application of rear-end presumption, reversed the directed verdict, and remanded for a new trial. See id. at 389.

. This Court recently explained that a vanishing presumption under Florida law is also commonly referred to as a "bursting bubble” presumption. Universal Ins. Co. of N. Am. v. Warfel, 82 So.3d 47, 54 (Fla.2012). This type of presumption, like the rear-end presumption at issue, is established to facilitate a particular type of legal action, and once the presump *360 tion is rebutted, it “disappears and the jury is not told of it.” See id. (quoting Dep’t of Agric. and Consumer Servs. v. Bonanno, 568 So.2d 24, 31 (Fla.1990)) (emphasis omitted). We also explained in Warfel that a vanishing presumption is significantly different than those presumptions under Florida law created to expressly advance a strong social policy such as the legitimacy of a child or the validity of a marriage. Id. at 62. As we explained in Warfel, presumptions imposed by the Legislature to advance strong social policies do not disappear in the face of contrary evidence; rather, a presumption enacted to express public policy remains intact throughout the duration of the case, and the burden of disproving the presumption remains with the party against whom the presumption is drawn. Id. at 53.

. See Eppler, 752 So.2d at 594 ("The device bears only upon the causal negligence of the rear driver ...”); accord, Clampitt, 786 So.2d at 573.

. We acknowledge that this Court’s opinion in Clampitt contains language that, if considered apart from the specific legal issue presented in that case, could give the appearance that rear-end collision cases are a unique class of negligence claims not governed by the system of comparative negligence mandated by Florida law. See 786 So.2d at 575 ("In effect the law requires all drivers to push ahead of themselves an imaginary clear stopping distance or assured stopping space or adequate zone within which the driven vehicle can come to a stop. Failure to maintain such a zone is normally the sole proximate cause of injuries and damages resulting from the collision of a vehicle with an object ahead.”). Nevertheless, the legal issue in Clampitt was whether the rear driver defendant against whom summary judgment was entered had sufficiently rebutted the presumption of his own negligence. And no portion of the majority’s opinion in Clampitt addressed the apportionment of damages or Florida's system of comparative fault. Accordingly, the Court’s opinion in Clampitt neither addressed nor attempted to resolve the specific issue presented here.

. Undoubtedly, the rear-end presumption, in addition to being a useful evidentiary device for a particular species of automobile accidents, also serves a salutary secondary purpose under Florida law in that it also upholds a driver’s duty to operate his vehicle in a reasonably safe manner so as to avoid collisions with forward objects. Nevertheless, drivers on Florida’s roadways owe a duty of reasonable care not only to those driving in front of them, but also to those who are following, and all other individuals within the foreseeable zone of danger. See, e.g., § 316.183(5), Fla. Stat. (2012) (State Uniform Traffic Control Law). Under Florida law, negligence is the failure to use reasonable care under the circumstances. See Fla. Std. Jury Instr. (Civ.) 401.4. And, as expressed by the Fifth District in its opinion in the case here at issue:
As a matter of public policy, we want all drivers to obey all traffic laws, not just the prohibition against following too closely. We want drivers not to go the wrong way down a one-way street; we want the speed limits and traffic signals obeyed; we want headlights on after dark. (Presumably, we also want drivers not to make sudden stops for no good reason in the middle of the roadway.) In all these other instances, rules of comparative negligence apply.
Charron, 37 So.3d at 297 n. 6. (emphasis in original).