# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____


BETTY BAXTER, as personal representative
of the Estate of Brian Baxter, deceased,

Appellant,

v.

MARK MORELLI; VENEZIA TRANSPORT SERVICES, INC.; VENEZIA
BULK TRANSPORT, INC.; VENEZIA HAULING, INC.; and JOHN
PRESTON,

Appellees.

No. 2D2023-1609

_____

February 12, 2025

Appeal from the Circuit Court for Pasco County; Declan P. Mansfield,
Judge.

Stuart C. Markman, Brandon K. Breslow, Robert W. Ritsch, and Kristin
A. Norse of Kynes, Markman & Felman, P.A., Tampa, for Appellant.

Michael R. D'Lugo of Wicker Smith O'Hara McCoy & Ford, P.A., Orlando,
for Appellees Venezia Bulk Transport, Inc., Venezia Transport Services,
Inc., and John Preston.

No appearance for Appellees Mark Morelli or Venezia Hauling, Inc.

ATKINSON, Judge.

Betty Baxter, as personal representative of the Estate of Brian Baxter, appeals the trial court's final summary judgment in favor of Venezia Transport Services, Inc.; Venezia Bulk Transport, Inc.; Venezia Hauling, Inc.; and John Preston in this wrongful death action. She argues that the trial court erred by granting summary judgment because there were genuine disputes of material fact concerning Mr. Preston's alleged negligence and, consequently, the Venezia entities' vicarious liability. We agree with Ms. Baxter, so we reverse the final summary judgment and remand for further proceedings.

## Background

Before sunrise at approximately 6:00 a.m., Daniel Baxter was driving his Toyota Corolla to work with his brother, Brian Baxter, in the passenger seat. In front of the Baxters, Mr. Preston was driving an eighty-thousand-pound tractor hauling a tanker trailer filled with cement. Mr. Preston took his foot off the accelerator to slow down when he saw vehicles ahead of him in a grassy area off the shoulder of the road, and he ultimately slammed on his brakes after one of those vehicles pulled out in front of him. Just a few seconds later, the Baxter car struck the rear end of Mr. Preston's trailer, killing Brian instantly. Daniel recovered from serious injuries, but he has no memory of the incident.

Ms. Baxter filed a wrongful death action on behalf of Brian's estate against Appellees, alleging that the death of her son Brian was caused by Mr. Preston's negligence and that the companies he worked for—the Venezia entities—were vicariously liable for his negligence. Relevant to this appeal, Ms. Baxter alleged that Mr. Preston failed to ensure the trailer he was hauling was "appropriately lit so that it could be readily

2

seen and avoided" by other motorists and that he operated the tractor trailer in a "negligent and unsafe manner."

Mr. Preston and the Venezia entities moved for summary judgment, arguing that there was no evidence from which a jury could conclude that Mr. Preston was negligent. Mr. Preston testified in his deposition that his trailer was equipped with two taillights on each side, two brake lights, and three lights at the top of the trailer. He explained that he arrived at the trucking terminal between 4:30 and 5:00 a.m. the morning of the incident and performed a pre-trip inspection that revealed "no problem" with the trailer lights. While driving in the right southbound lane in a "dark area" of the highway, Mr. Preston saw two vehicles off the shoulder of the road in the grass. He acknowledged that he thought to himself that there "may be a problem in front of him." He saw vehicles in his driver's side mirror that prevented him from switching lanes, so he took his foot off the accelerator as a "cautionary move" to slow down "just in case someone would pull out" in front of him. When one of those vehicles entered Mr. Preston's lane,[1] he "[s]tood on the brakes" to avoid a collision. He testified that during this time he did not have any concern about something happening to the rear of his tractor trailer and "wasn't even thinking about it" and that he was "relieved that [he] just didn't run over that guy in front of [him]."

The speed limit where the collision occurred was seventy miles per hour. The dash camera video from Mr. Preston's tractor trailer shows that he was traveling at sixty-eight miles per hour. Though Mr. Preston believed that by letting his foot off the accelerator he had slowed down to

---

[1] The vehicle that pulled in front of Mr. Preston was driven by Appellee Mark Morelli. Ms. Baxter also sued Mr. Morelli for negligence, but that claim is not at issue in this appeal.

"maybe between 40, 50, 55, something like that maybe," the dash camera video reflects that he only slowed down to sixty-six miles per hour. Approximately eight seconds passed from when Mr. Preston let his foot off the accelerator to when he "[s]tood on the brakes," at which point the tractor trailer slowed from sixty-six to twelve miles per hour in approximately five seconds. According to the airbag control module from the Baxter car, Daniel was driving between seventy-three and seventy-four miles per hour and did not begin to brake until "1 to 1.5 seconds prior to impact." The Baxter car struck the rear of Mr. Preston's trailer at 62.1 miles per hour.

In opposition to the motion for summary judgment, Ms. Baxter submitted the depositions of two eyewitnesses to the collision—Dawn Johnson and John Vacha. Ms. Johnson testified that she was driving in the left southbound lane. She said it "was pitch dark out" and "all of a sudden I just noticed to the right of me, it looked like something exploded." She said she "didn't see any lights" and "didn't know what [she] was looking at until [she] drove by them" and "could see that a car had smashed into the back of a truck." Ms. Johnson explained that prior to the collision, she did not see the Baxter car or Mr. Preston's truck.

> Q. At any point in time prior to that collision, did you ever see the truck?
>
> A. No. And like I said, it was dark. I'm out in the fast lane and I'm getting ready to cut -- I see cars on the right-hand side and we're coming up on them, just flowing with traffic, and all of a sudden, bam. I didn't see any lights whatsoever. I didn't see any brake lights when the car hit the back of the truck. That's why I was confused at what I saw. You know what I mean? You can tell when someone puts their foot on the brakes. I didn't see anything that caught my attention like that. You know what I mean? I'm convinced to this day myself, if I would have been in the slow lane, that

4

could have been me because I did not see a truck. All I saw was this car just smash.

. . . .

Q. The car that ultimately ran into the back of the cement truck, did you see that car at all before the explosion that you described?

A. No. I mean, I could just see that I was coming up on cars, you know, on the right-hand side. I'm on my way to work. I wasn't really paying too much attention.

Q. Did you see -- the car that ultimately ran into the back of the cement truck, did you see its brake lights at any time?

A. No. No. That's why I was confused at what I saw because they didn't brake at all. It was just all of a sudden the car was going and then, bam, it wasn't anymore.

Ms. Johnson reiterated that she "would notice if somebody put on their brakes" but "didn't see any kind of brake lights" on the truck, "[s]o [she] did not see the truck until [she] went by it and saw actually what the car hit."

Mr. Vacha testified that he was driving "directly behind" the Baxter car in the right southbound lane and "saw the impact," which he described as "like a flash or glimmer up ahead." He shifted to the left lane and as he came closer realized that the glimmer "was the car coming up off the ground after it hit the tanker." Mr. Vacha believed that he remembered seeing the Baxter car prior to the collision, but he did not see Mr. Preston's truck prior to the collision.

Q. Do you recall seeing the car ahead of you before the collision?

A. I believe I remember seeing the taillights ahead of me. Again, I wasn't really paying -- there was no reason for me to pay attention to the car, other than make sure not to hit the car.

Q. Do you recall seeing the truck prior to the collision?

5

A. I didn't see the truck until I got all the way up on it and could see the debris. I just saw -- and I told the patrolman that I didn't see any lights on the truck.

Q. When you got up towards the area of the collision, that's the first time you saw the truck; is that right?

A. Yes, sir.

Q. Did you see any lights on the truck at that time?

A. I didn't notice any trailer lights on the truck. I believe I remember headlights on the truck, but I didn't see any trailer lights or running lights that typically are on some of the trailers and stuff like that. I didn't see any of that.

The trial court granted final summary judgment in favor of Mr. Preston and the Venezia entities. The trial court concluded that Ms. Baxter did not produce any evidence to rebut the presumption under Florida law that Daniel Baxter, as the rear driver, was negligent. As to Mr. Preston, the trial court reasoned that "[n]one of [his] actions can or should constitute negligence," as he "observed a sudden obstruction in his lane of travel and reasonably applied his brakes to avoid it, which he admirably did successfully." The trial court further reasoned that there was no evidence of a "deficiency in the trailer." On that point, the trial court noted that the "uncontroverted testimony of Mr. Preston [wa]s that he performed a pre-trip inspection of the brake lights on his trailer before he left the parking yard on the morning of the subject incident and that all of the lights were in working order." The trial court also described the testimony of Ms. Johnson and Mr. Vacha as showing that "they were not paying close attention to the vehicles" but "instead trying to avoid the incident," and their testimony "indicate[d] more than anything they didn't see Mr. Preston engage his emergency flashers."

6

## Analysis

We review a trial court's grant of summary judgment de novo. *See Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). "[T]he correct test for the existence of a genuine factual dispute is whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d 72, 75 (Fla. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "We view the facts in the light most favorable to [the nonmoving party] and may not weigh the evidence or make credibility determinations." *Lassiter v. Citizens Prop. Ins.*, 386 So. 3d 646, 651 (Fla. 2d DCA 2024) (alteration in original) (quoting *G & G In-Between Bridge Club Corp. v. Palm Plaza Assocs.*, 356 So. 3d 292, 297 (Fla. 2d DCA 2023)). "Summary judgment is not intended to weigh and resolve genuine [disputes as to any] material fact, but only [to] identify whether such issues exist." *Id.* at 652 (alterations in original) (quoting *Clampitt v. Wick*, 320 So. 3d 826, 833 (Fla. 2d DCA 2021)).

"Under Florida decisional law, there is a rebuttable presumption of negligence that attaches to the rear driver in a rear-end motor vehicle collision case." *Birge v. Charron*, 107 So. 3d 350, 353 (Fla. 2012). The trial court granted summary judgment at least in part based on a misapplication of that presumption when it reasoned that Ms. Baxter failed to produce any evidence supporting a reasonable explanation why the driver of the Baxter vehicle was not negligent to rebut the presumption. However, "the presumption of rear-driver negligence 'bears only upon the causal negligence of the rear driver,' and thus, does not

7

speak to or touch upon any factual or legal issue regarding the negligence of the front driver." *Id.* at 360 (footnote omitted) (quoting *Eppler v. Tarmac Am., Inc.*, 752 So. 2d 592, 594 (Fla. 2000)). At issue here is the alleged negligence of the front driver, Mr. Preston. So even though the rear driver is presumed negligent in a rear-end collision case, the presumption does not bar a rear driver's claim "where there is evidence from which a jury could conclude that the front driver defendant was negligent and comparatively at fault in causing the collision." *Id.* To the contrary, "where evidence is produced from which a jury could conclude that the front driver in a rear-end collision was negligent and comparatively at fault in bringing about the collision, the presumption is rebutted and the issues of disputed fact regarding negligence and causation should be submitted to the jury." *Id.* at 361. The trial court erred to the extent that it entered summary judgment based on the rationale that Ms. Baxter failed to produce evidence explaining why the driver of the Baxter vehicle *was not* negligent instead of focusing on whether Ms. Baxter produced evidence from which a jury could conclude that Mr. Preston *was* negligent.

As to Mr. Preston's alleged negligence, the evidence reveals that there is a genuine dispute of material fact regarding whether the taillights and brake lights on Mr. Preston's trailer were working at the time the collision occurred. The trial court noted that Mr. Preston testified that he performed a pre-trip inspection the morning of the collision that revealed his trailer lights were working. On the other hand, Ms. Johnson and Mr. Vacha both testified that they saw the collision but never saw any lights on Mr. Preston's trailer. They also testified that it was dark and that they did not even know Mr. Preston's tractor trailer was on the road until they approached it after the collision occurred,

8

supporting a reasonable inference that the reason why they did not see the tractor trailer was because it was dark and none of the trailer lights were illuminated. In reaching its erroneous conclusion that there was no genuine dispute of material fact, the trial court disregarded evidence supporting that Mr. Preston was driving in the dark without his lights on. Moreover, for our review of the order entering summary judgment, we must consider reasonable inferences supported by the facts as testified to by Ms. Johnson and Mr. Vacha that are favorable to Ms. Baxter as the nonmoving party. *See Lassiter*, 386 So. 3d at 651. In doing so, the evidence is such that a reasonable jury could conclude that Mr. Preston was at least partially responsible for the collision because the absence of functioning trailer lights may have prevented the Baxters from seeing the tractor trailer in the dark conditions or from otherwise realizing that the tractor trailer was rapidly decelerating after application of its brakes on a high-speed roadway. *See Jiminez v. Faccone*, 98 So. 3d 621, 624–25 (Fla. 2d DCA 2012) (reversing the trial court's grant of summary judgment against a rear driver because "conflicting testimony regarding whether the [front driver's] vehicle was properly illuminated" meant the "negligence issue should have been submitted to the jury"); *Davis v. Chips Express, Inc.*, 676 So. 2d 984, 986 (Fla. 1st DCA 1996) (reversing the trial court's grant of summary judgment against a rear driver because "disputed issues of fact exist[ed] with respect to whether the possibly inadequate lighting and the slow speed of the [front driver's] vehicle were causative factors in the collision"). As such, the trial court should have submitted the case to the jury because Ms. Baxter produced evidence "from which a jury could conclude that the front driver in a rear-end collision was negligent and comparatively at fault in bringing about the collision." *Birge,* 107 So. 3d at 361.

9

The trial court accepted Mr. Preston's testimony regarding his pre-trip inspection of the trailer lights as "uncontroverted" on the basis that Ms. Johnson and Mr. Vacha testified "they were not paying close attention to the vehicles involved in the subject incident until after the incident occurred." In doing so, however, the trial court disregarded Ms. Johnson and Mr. Vacha's unequivocal testimony that they saw the impact and never saw any lights on the back of Mr. Preston's trailer. And by discounting those facts on the basis that Ms. Johnson and Mr. Vacha "were not paying close attention," the trial court impermissibly weighed and considered the credibility of their testimony. *See Lassiter*, 386 So. 3d at 651 (" 'It is improper to consider either the weight of conflicting evidence or the credibility of witnesses' in ruling on a motion for summary judgment." (quoting *Bernhardt v. Halikoytakis*, 95 So. 3d 1006, 1008–09 (Fla. 2d DCA 2012))). In other words, the trial court tacitly concluded that Ms. Johnson and Mr. Vacha's testimony was not believable based on a presumption of their lack of requisite attentiveness. The trial court thus exceeded its role to *identify* genuine disputes of material fact and instead *resolved* a genuine dispute of fact regarding the alleged illumination of Mr. Preston's trailer lights by weighing Ms. Johnson and Mr. Vacha's testimony and assigning less credibility to it than Mr. Preston's testimony that he had inspected the lights before his trip.

Additionally, Ms. Baxter correctly argues that even presuming the trailer lights were illuminated, there is a genuine dispute of material fact regarding whether Mr. Preston used reasonable care under the circumstances to avoid a collision with the Baxter car. "[D]rivers on Florida's roadways owe a duty of reasonable care not only to those driving in front of them, but also to those who are following, and all other

10

individuals within the foreseeable zone of danger." *Birge*, 107 So. 3d at 361 n.19. It is generally a factfinder's role to determine whether a driver exercised reasonable care under the circumstances, including whether a driver used reasonable care under the circumstances to avoid a collision. *See Trouette v. Reynolds*, 593 So. 2d 1203, 1204 (Fla. 5th DCA 1992) ("The factfinder must also be given the task of determining whether and when a reasonable, prudent driver should have first noticed Trouette's negligent operation and when and what evasive action should have been taken.").

Evidence that must be viewed in the light most favorable to Ms. Baxter, including testimony from Mr. Preston himself, could support a conclusion that Mr. Preston's actions made him comparatively at fault. Mr. Preston recognized that there "may be a problem" from the moment he saw the vehicles in front of him "on the shoulder" of the road. To avoid the possibility of a collision in the event the vehicles pulled in front of him, Mr. Preston let his foot off the accelerator—but did not apply his brakes—for an approximately eight-second period to slow his tractor trailer down. That strategy did not have the effect Mr. Preston predicted it would, as he only slowed down by two miles per hour when he thought he would have slowed down much more. When Mr. Preston then "[s]tood on the brakes" to avoid a collision after eight seconds of coasting, evidence supports that the rapid deceleration of an eighty-thousand-pound tractor trailer on a high-speed roadway might have afforded drivers behind him less time to react than they would have had if he had applied his brakes sooner and in a more controlled manner so that rear drivers would be alerted by his brake lights sooner. But Mr. Preston admitted that he "wasn't even thinking" about drivers behind him when he chose to let his foot off the accelerator. While the trial court's premise

11

that Mr. Preston "successfully" avoided the "sudden obstruction in his lane of travel" finds support in the record, it does not support the trial court's conclusion that "[n]one of [Mr. Preston's] actions can or should constitute negligence."  In light of Mr. Preston's admission that his course of action did not have its intended effect—and evidence that it had the deleterious effect of significantly reducing the rear driver's ability to avoid the obstruction in *his* lane of travel—a reasonable jury could conclude that Mr. Preston failed to use reasonable care to avoid a collision with the Baxter car behind him.

Finally, because Ms. Baxter alleged that the Venezia entities are vicariously liable for Mr. Preston's negligence, the genuine disputes of material fact that preclude the entry of summary judgment in Mr. Preston's favor also preclude the entry of summary judgment in the Venezia entities' favor.  Thus, we reverse the trial court's final summary judgment and remand for further proceedings.

Reversed and remanded.

MORRIS and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.